Sedgwick v. Cottingham.

## SEDGWICK v. COTTINGHAM.

1. **Sale**: SHIPMENT OF GRAIN: DELIVERY. The plaintiff contracted to sell to the defendant a car load of wheat, to be shipped to a point named, where it was to be taken from the car by the defendant, and paid for upon being weighed by him. The plaintiff shipped the car of wheat, which reached the designated station, and was placed upon a side track, where it was accidentally destroyed: *Held*, that, the plaintiff having completed the performance of his part of the contract, the delivery was complete, and the plaintiff was entitled to recover the purchase money.

*Appeal from Cherokee District Court.*

THURSDAY, OCTOBER 7.

ACTION to recover for a car load of wheat shipped by the plaintiff to the defendant. Trial to the court, a finding of facts, and judgment for the defendant. The plaintiff appeals.

*Struble Bros.*, for appellant.

*Kellogg & Herrick*, for appellee.

SEEVERS, J.—The following facts were found by the court:

1st. That in the month of July, 1878, the plaintiff, Sedg-. wick, resided in Portlandville, in the county of Plymouth, and State of Iowa, and that he was then and there engaged in the purchase and sale of grain.

2d. That the defendant, Cottingham, was at said time a resident of Benton, in the State of Wisconsin, and that he was then and there engaged in the milling business.

3d. That the plaintiff and defendant, on or about the 8th day of July, 1878, made an agreement that the plaintiff

1. SALE: ship- should ship to the defendant by rail from Port-
ment of grain:
delivery. landville, Iowa, viz: the Illinois Central Railroad —one car load of No. 1 hard wheat, to be billed to Cairo,. Ills., to be milled by defendant in transit at Council Hill,. Ills.; that defendant was to take said wheat from the car at said Council Hill, haul the same to his mill at Benton, Wis., ten miles distant from Council Hill, and pay for said wheat at the price of $1 per bushel, less freight, as soon as the wheat should be weighed on defendant's scales at his said mill.

4th. That by the terms of this agreement under which the said wheat was shipped, the same was to be delivered by the plaintiff, Sedgwick, to the defendant, Cottingham, on the track at Council Hill, in Jo Daviess county, Ills.

5th. That the plaintiff, Sedgwick, on the 9th day of July, 1878, shipped to the defendant, under the agreement heretofore formed, one car No. 1 hard wheat from Portlandville, Iowa, to Council Hill, Ills., which said car contained 400 bushels.

6th. That the freight on said car from Portlandville down to Council Hill, Ills., was $———.

7th. That said car arrived at Council Hill, Ills., at 11 A. M., July 11th, 1878, in good condition, and with the wheat therein, 400 bushels in amount, in good condition.

8th. That on the arrival of said car at said Council Hill, Ills., July 11th, 1878, the same was immediately side-tracked

at a place where the wheat could have been taken therefrom, but at a place where it was unusual to side-track same and take grain therefrom, and at a place where grain could not have been removed therefrom with reasonable convenience.

9th. That no special reason is shown to prevent the placing of .the car at a usual and reasonable place for unloading, nor is any such reason shown for permitting same to remain during the night where it was found side-tracked.

10th. That said car could, on demand, and within five minutes after demand, on July 11, have been placed in a suitable and convenient place for the removal of the wheat therefrom.

11th. That, at the time of arrival of the car at Council Hill, Ills., the following rule of the Illinois Central Railroad Company was in force at that place, to-wit:

#### "LOADING AND UNLOADING.

"All chartered cars or cars loaded with lumber, grain, or other property, which is to be unloaded by owners or consignee, whether at side-track or regular stations, must be unloaded within twenty-four hours after their arrival at their place of destination, or a charge of five dollars per day will be made for such car after that time till unloaded."

12th. That it was then the custom of the company, by its agent at Council Hill, Ills., always to give notice to parties residing a distance from the station of the arrival of freight or goods consigned to them.

13th. That the agent of the Illinois Central Railroad Company, on the same day of the arrival of the car containing the wheat, wrote and mailed notice to the defendant of its arrival at Council Hill, which notice reached the defendant in the then usual course of mail at 11 A. M., July 12th, 1878; that said notice was the first the defendant had of the arrival of the said wheat or car, and that he immediately, on the receipt thereof, sent men and teams to get said wheat.

14th. That at about 12 P. M., July 11, 1878, the car containing said wheat was washed from side-track by an unusual and extraordinary flow of water, and said wheat, by reason thereof, was completely and wholly lost.

15th. That said car had not, when the same was lost, been delivered to the defendant, Cottingham, or by him been received.

The important inquiry is whether there was a delivery of the wheat when it was placed on the side-track at Council Hill, for, under the contract, that was the place of delivery.

If it be conceded the railroad company was the agent of the plaintiff up to the time the wheat arrived at the place of destination, it does not follow this relation continued after that time.

When the wheat arrived at Council Hill, the contract on plaintiff's part was completed. The defendant should have been there to receive it. This duty necessarily followed. Not being there, the railroad company became his agent, because the plaintiff had done all he agreed to do. This being so, the plaintiff is not responsible for what was done by the defendant's agent. It is, therefore, immaterial whether the car was placed at a proper and convenient place for unloading or not.

But it is urged the defendant was not to pay for the wheat until it had been weighed on the defendant's scales, which were ten miles distant from the place of delivery. Suppose the defendant had taken the wheat into his custody by placing it in wagons, for the purpose of transporting it to his mill and scales, and it had been destroyed, without his fault or negligence, before reaching there, upon whom should the loss fall? most clearly, we think, upon the defendant. Therefore, the weighing is not a pivotal matter. It was to be done by the defendant after he had received it into his actual custody, and after it had been delivered at the place fixed by the contract. A careful consideration of the third finding of fact will demonstrate, we think, that the weighing has refer-

ence only to the time of payment, and whether there had been a delivery or not is in no manner controlled or affected thereby.

As it became impossible to weigh the wheat without the fault or negligence of the plaintiff, and he had fully complied with the contract as to the delivery, he should recover therefor

REVERSED.