HEINBERG BROTHERS, APPELLANTS, VS. F. CANNON & CO., APPELLEES.

SALE AND DELIVERY OF GOODS—DUTY OF VENDOR AND PURCHASER AS TO THE TIME, PLACE AND MANNER OF DELIVERY—CHARGES OF LAW TO JURY MUST BE CONSONANT WITH FACTS IN PROOF.

1. Where a firm in Galveston, Texas, contracted with a firm in Pensacola, Florida, to sell and deliver to the latter a certain quantity and quality of oats, "free on board" the wharves at Pensacola, Florida, within a certain time and at an agreed price, and the latter firm agreed upon its part there to receive them and to pay for them the agreed price; and the selling firm complied with their part of the contract by safely sending to the place, within the time stipulated, the quantity and quality of oats contracted for, giving to the purchasing firm due and reasonable notice of their arrival, and a reasonable opportunity

to inspect, care for and protect them against loss or damage, and to take them away, and then and there makes tender of delivery in weather reasonably suitable to the safety of goods of such perishable character, it became the duty of the pur-chasiñg firm then and there to receive them, and to care for and protect them from loss and injury from the weather or otherwise, and they then and there became responsible for the agreed price; and if the goods are subsequently damaged in consequence of their failure to receive, care for and protect them, the loss falls upon them.

2. There is no error in refusing to give requested instructions that are not consonant with the facts in proof.

Appeal from the Circuit Court for Escambia county.

The facts in the case are stated in the opinion of the court.

*John C. Avery*, for Appellants.

*Blount & Blount*, for Appellees.

TAYLOR, J.:

F. Cannon & Co., the appellees, who were merchants, of Galveston, Texas, sued the appellants, Heinberg Brothers, merchants, of Pensacola, Florida, in the Circuit Court of Escambia county in assumpsit. The declaration contained two counts: (1) *indebitatus as-sumpsit* in the sum of $673.47 for goods, wares and merchandise sold and delivered by the plaintiffs to the defendants at their request; and, (2), for goods, etc., bargained and sold by the plaintiffs to the defendants. The defendants plead to the first count of the declara-tion, that they never were indebted except in the sum of $35; and, to the second count, that by the terms of their contract with the plaintiffs the plaintiffs were to deliver the goods, wares and merchandise, but deliv-

ered only a part thereof, to-wit: $35. Issue was joined upon those pleas, the cause was submitted to a jury upon the proofs and the result was a verdict and judgment in favor of the plaintiffs for the sum of $491.61. From this judgment the defendants below appeal here.

A synopsis of the case made by the proofs becomes necessary to an intelligent understanding of the assignments of error. The defendants, who were dealers in groceries, liquors, produce and provisions at Pensacola, Florida, entered into the following written contract of purchase of oats with the plaintiffs:

"PENSACOLA, 5, 29, 1889.

We have this day sold Mess. Heinberg Bros. two (2) cars Texas average oats at thirty-two (32) cents, f. o. b. wharves, Pensacola, Fla. Terms cash, payable in Gaveston, Texas, or New York exchange. Above sale subject to securing transportation. Limit of shipment three weeks.

F. CANNON & Co.,<br>per W. R. HUTCHES,<br>HEINBEG BROS.

Signed in duplicate. Cars average 1100 to 1300 bu."

The oats, 479 sacks of about four bushels each, called for by this contract, were shipped by the plaintiffs to the defendants in due time by the schooner "Helene" from Galveston, Texas, together with several other consignments, of nearly equal amounts, to several other consignees in Pensacola; and, besides being the kind, quality and amount called for by the contract, were in good order and condition when shipped at Galveston. The schooner Helene in which they were shipped arrived at Pensacola on Saturday, June 29th, 1889, between 3 and 5 o'clock p. m., and moored at Saunders' wharf, or Palafox wharf, located

at the end of the same street on which the defendants' store was situated, and only some four or five blocks distant from their store. The captain of the schooner, at once on his arrival on Saturday evening, went to the defendants' store and notified them of his arrival with their consignment of oats, and that he would be ready to discharge and deliver them on the Monday morning following. On the following Monday morning the vessel began discharging her cargo on the wharf. The defendants on the morning of that day hauled away thirty-eight sacks of their oats, but stopped hauling at noon and refused to accept or receive any more of their consignment, and on the first of July they telegraphed to the plaintiffs at Galveston that the goods were damaged by exposure to rain and that they rejected them. The other parties in Pensacola, to whom oats of the same quality and kind were consigned by the same vessel and from the same plaintiffs, had no difficulty in getting their oats into their stores without damage from the weather. The proof is somewhat conflicting as to the state of the weather during the discharge of the ship's cargo of oats. The plaintiffs' witnesses testifying that with the exception of one or two short light showers the weather continued free of rain until the Thursday following the vessel's arrival at Pensacola; while the defendants' witnesses insisted that it rained continuously the whole time except a few hours on Monday morning after the vessel's arrival. The oats were in perfect condition until after being discharged from the vessel onto the wharf. There is no proof that any of them were discharged from the vessel while it was raining, but the unloading was done between such showers of rain as there were. One set of witnesses testifying that these were light and at several hours apart until Thursday after the vessel ar-

rived; the others testifying that the weather was continuously stormy and remaining very hard at times. The captain of the vessel protected the oats on the wharf with sails and tarpaulins during the rain showers, and insisted each day that the defendants should come and take them away. There was no warehouse on the wharf where the oats were discharged. After remaining upon the wharf until the following week the oats were sold at auction for account of all persons concerned by the agent of the consignors, and, after deducting all expenses, netted $142.40. The testimony of the purchasers at the auction sale is to the effect that while the oats, even after their long exposure on the wharf, appeared externally to have been damaged considerably by the rains, were in fact but very slightly damaged. One of these purchasers, a livery stable man, who purchased four hundred sacks at the auction sale, testified that he lost only about one sack from being damaged out of the four hundred that he bought. The testimony is further conflicting as to the reasons why the defendants would not receive their oats. The plaintiffs' witnesses testifying that the reasons assigned by the defendants, at the time the captain of the vessel notified them to take them away on Monday were, that it was inconventient for them to haul them on that day, it being the first of the month and settling day, and that their drays were busy, and that they could not get drays except at twenty-five cents per load, and they could not afford to pay that price, and that they really did not want the oats anyway. These reasons the defendants deny having assigned, but ground their refusal to accept wholly upon the weather in which the oats were discharged from the vessel. The plaintiffs' witnesses, on the other hand testified that the weather was such that

the defendants could easily, with anything like promptness and despatch, have safely stored all of their oats without injury or damage, as did the other consignees of oats in Pensacola out of the same cargo, some of them nearly equal in amount to the defendants' consignment. The thirty-eight sacks of oats that the defendants received and hauled away they did not offer to return, but appropriated them to their own use.

Upon this state of facts the court, after instructing the jury that they were the sole judges of the evidence, and of its weight and of the credibility of the witnesses, and that it was their duty and province to reconcile conflicts in the evidence if they could, gave them the following charges: (1) "This is a suit instituted by the plaintiffs against the defendants to recover the value of a large quantity of oats that were sold by the plaintiffs to the defendants under a written contract. It is the province of the court to construe that contract, and the court construes that contract to be this: That the plaintiffs in this case undertook to sell some oats to the defendants to be delivered by a certain time, and they were to be of average Texas quality, and they were sold at a certain price, thirty-two cents a bushel, and were to be delivered at Pensacola upon a wharf in Pensacola. Now, the court charges you that if you believe that these oats that the plaintiffs did deliver upon a wharf in Pensacola within the time stipulated in this contract, a large quantity of oats under that contract, and that they delivered it upon the wharf within the time, and that the oats were in good order, and that they delivered it when the weather was of such a character that the defendants could prevent that property from damage, it was their duty to have accepted, and if they

failed to accept, why then they are responsible for the damage that occurred. You will determine from the evidence in this case whether the oats were delivered upon the wharf in Pensacola, and determine from the evidence, in accordance with the contract, whether they were delivered in such weather that the defendants in this case, by reason of diligence, could protect the oats from serious damage; and if you believe that they did, and delivered them in such quantity and manner upon the wharf that the defendants could, by reasonable diligence, have protected the oats from the weather or from damage, it was their duty to do so. If they failed to accept them, then they are responsible for the whole value of the oats, and if delivered in the proper kind of weather they would be responsible for the damage, if they could have protected them from damage. If, on the other hand, you believe that they were delivered on this wharf, and that the weather was of such a character that the defendants could not have protected them from damage, then they are not responsible, and they are only responsible for the quantity of oats they received. And you are the judges of how the question stands upon the evidence, and you are to determine it according to the weight of the evidence and a preponderance of the evidence." (2) "If you believe from the testimony that the goods were put upon the wharf when it was not raining, and that the defendants had been previously notified that they were to be unloaded upon the wharf, then it was the duty of the defendants to take the goods and to provide means for protecting them if a reasonable time was given so to do. And if you believe from the testimony that the weather was threatening at the time that the goods were put upon the wharf, then defend-

ants should have used greater diligence in protecting the goods."

The two following charges were requested by the defendants' counsel, but the court refused to give them, *viz:* (1) "If you find from the evidence that the plaintiffs or their agents discharged the oats in question upon the wharf in the rain, the defendants would not be required under such circumstances to accept them, if they were injured by the rain in consequence." (2) "If you find from the evidence that through the fault of the plaintiffs or their agents a considerable portion of the oats were damaged before delivery to defendants, then the defendants had a right to reject all."

The errors assigned are, the court's refusal to give the two instructions requested by the defendants; the giving of the instruction numbered 2 of those given by the court; the court's refusal to grant the defendants' motion for new trial, and the rendition of judgment against the defendants.

It was clearly the duty of the defendants, under the contract of sale between them and the plaintiffs, to have accepted the oats on the wharf at Pensacola if they were of the kind, quality and quantity called for by the contract, and if they were delivered or tendered on the wharf at Pensacola within the time contracted for, and in such weather as that, with the exercise of reasonable care and diligence, the defendants could have secured and protected them from damage, after receiving reasonable notice of the readiness of the ship's master, acting as the agent of the plaintiffs, there to deliver them. Under the provision in the contract between these parties that the goods were to be delivered by the plaintiffs to the defendants on the wharf at Pensacola, free of expense to the defendants,

the carrying vessel and its master became and continued to be the agent of the plaintiffs, consignors, until the delivery of the goods according to the terms of the contract, or until the happening of that which was tantamount to a delivery, a full tender of delivery of the quantity and quality of goods contracted for, within the time and at the place contracted for, after due and reasonable notice thereof to the consignees and the allowance of a fair and reasonable opportunity to the consignees to examine them and to care for and secure them against damage. Neither the carrying vessel nor the plaintiff consignors were under any duty to make personal delivery of the goods to the defendants, but they discharged their whole duty under the contract here if the master of the vessel upon his arrival at the contract place of delivery gave due and reasonable notice thereof to the defendant consignees, and of his readiness to deliver the goods called for by the contract. The defendant consignees, under such circumstances, after such notice, became bound to provide suitable means to take care of them and to carry them away, and became bound for their price. The master of the vessel, however, even after notice of his arrival and readiness to deliver the goods, they being of a perishable nature if exposed to rain, could not relieve himself or his employers, the plaintiff consignors, from the obligation to make a safe delivery at the place contracted for, by discharging such goods upon an unprotected wharf in the rain, but he was bound to make the delivery in suitable weather for the safe discharge of such goods. Story on Bailments (8th ed.), sec. 545; The Eddy, 5 Wall. 481; Richardson vs. Goddard, 23 How. 28; 3 Kent's Com. (13th ed.), m. p. 214 *et seq.; Ex parte* Easton, 5 Otto, 68;

Chickering vs. Fowler, 4 Pick. 371; The Tybee, 1 Woods (U. S. C. C.), 358; Dibble & Seligson vs. Morgan, Ibid, 406; Sedgwick vs. Cottingham, 54 Iowa, 512; Cope vs. Cordova, 1 Rawle, 205; McAndrew vs. Whitlock, 52 N. Y. 40, S. C. 11 Am. Rep. 657. We think that the two charges given by the court fairly embody these well-settled principles of law, and we do not think that there was any error in the charge given and excepted to. The defendants contracted for a delivery of the oats upon an open and unprotected wharf, and it was clearly their duty upon receiving due and reasonable notice of their arrival and of the ship master's readiness to deliver, to go there and receive them, and to care for and protect them if unloaded in weather reasonably suitable to their safety. They could not detain the vessel at the wharf to suit their leisure or convenience, nor to await an absolutely cloudless sky, but were under the duty to exert themselves with reasonable despatch, commensurate with surrounding conditions, to relieve the carrier of his responsibility by removing the goods to a place of safety. The charge given and objected to fairly instructs the jury, we think, upon this point.

The two charges refused by the court, as abstract propositions of law, were probably correct, but they were not consonant with the facts of this case. The hypothesis of fact upon which the first of the refused instructions is planted is, that the goods were discharged from the vessel upon the wharf *in the rain*. There is no proof to this effect. The uncontradicted evidence on the part of the plaintiffs was that none of the oats were landed in the rain, but that whenever a shower came up the work of unloading was suspended until it ceased, while that already landed was at such times protected with sail cloths and tarpaulins.

The second of the refused instructions ignores the fact that the contract between the parties was an entirety, and that it was admitted on the part of the defendants that a part of the consignment contracted for had been delivered to and received by them, and that in refusing to accept the residue of the consignment they had made no tender of a return of the portion received and accepted, but had retained it for their own uses. For these reasons this instruction was properly refused. The contract being an entire and indivisable one, the defendants could not accept and receive in part, and reject or rescind in part, but a receipt and acceptance by them, under the terms of the contract of a part of the goods contracted for amounted in law to a delivery and acceptance of the whole, and they could not reject a part without rejecting all under the circumstances here. The admitted facts here were that the defendants did not reject all the goods, as they would have had the right to do if they were damaged, even in part, before delivery, but they admit having received and accepted part of an entire consignment, and undertake to repudiate their contract only in part. The second refused instruction was, therefore, objectionable also because not consonant with the facts in proof.

We think the verdict found is simply supported by the evidence. An almost insurmountable obstacle to the success of the contention of the defendants, to the effect that the goods were discharged in such weather as that damage to them was unavoidable during delivery, was the fact that various other consignments of the same goods were safely delivered to and housed by various other consignees at the same time from the same vessel, in quite equal amounts, and without material damage from the prevailing weather. We think

the law of the case was fairly and fully presented by the instructions given, and finding no material error in the record, the judgment appealed from is affirmed.