SHIPPERS' COMPRESS & WAREHOUSE CO. v. CUMBY MERCANTILE & LUMBER CO. et al. (No. 1357.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 19, 1914. On Appellee's Motion for Rehearing, Dec. 23, 1914. Rehearing Denied Jan. 21, 1915.)

1. SALES (§ 71*)—WEIGHT—PROVISION FOR REFUND—VALIDITY.

A provision, in a contract for the sale and delivery of cotton, that the weight as determined by a compress company should be the basis of settlement between the seller and the buyer would not apply to cotton which the compress company converted but did not weigh, nor to that falsely weighed to cover up a contemplated fraudulent conversion, but bound the parties to settle by the weight as fairly and honestly determined by the compress company, and not as it might be falsely and fraudulently determined by it.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 189–196; Dec. Dig. § 71.*]

On Appellee's Motion for Rehearing.

2. CARRIERS (§ 51*)—CARRIAGE OF GOODS—RECITALS IN BILL OF LADING—EFFECT.

A recital in a bill of lading, showing cotton to have been consigned by the seller to the order of a certain named buyer, was conclusive that it was consigned to the buyer, and not to the shipper's order, "Notify."

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 148, 149; Dec. Dig. § 51.*]

3. BAILMENT (§ 31*)—CONVERSION BY BAILEE—ACTION—BURDEN OF PROOF.

A seller suing a compress company for its conversion of cotton which it was to weigh as a basis of settlement with the buyer had the burden of proof.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 124–131; Dec. Dig. § 31.*]

4. BAILMENT (§ 31*)—CONVERSION BY BAILEE—DRAFT ATTACHED TO BILL OF LADING—PRESUMPTION OF PAYMENT.

In a seller's action for conversion against the buyer of cotton and the compress company, which was to weigh it as a basis of settlement, for an alleged conversion of part of it by the compress company, where it appeared that the seller's draft attached to its bill of lading was in fact paid and the cotton delivered to the compress company, and that the carrier was without authority from the seller to deliver to either the buyer or the compress company before the draft was paid and the bill of lading presented to it, it would be presumed that the draft was promptly presented by the seller's bank and paid by the buyer before delivery to the compress company.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 124–131; Dec. Dig. § 31;* Trover and Conversion, Cent. Dig. § 215.]

5. BAILMENT (§ 16*)—CONVERSION BY BAILEE—LIABILITY.

A compress company, holding cotton as the bailee of the buyer and owner and converting it to its own use, was liable for its value.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 64–74; Dec. Dig. § 16;* Trover and Conversion, Cent. Dig. § 84.]

6. SUBROGATION (§ 11*) — ASSIGNMENT OF RIGHT—CLAIM FOR CONVERSION.

Where a compress company, receiving cotton to weigh it as a basis of settlement, was liable for conversion to the buyer and owner, who in turn was liable to the shipper for its value, and where in the shipper's action against them for conversion the buyer, instead of asserting the compress company's liability to it, asserted that in a settlement between it and the shipper, the cotton was treated as the shipper's property so as to estop it from claiming to the contrary as against the buyer, and that the liability of the compress company was not to it, but to the shipper, and it further appeared that the shipper was not liable to refund to the buyer upon final settlement the value of cotton wrongfully converted, the shipper was subrogated to the buyer's right to enforce liability for the conversion, and a judgment for it on the theory of its ownership would not be set aside.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 4; Dec. Dig. § 11.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from Hopkins County Court; Dan R. Junell, Judge.

Action by .the Cumby Mercantile & Lumber Company against the Shippers' Compress & Warehouse Company and others. Judgment for plaintiff against Shippers' Compress & Warehouse Company, and it appeals. Affirmed on rehearing.

This was a suit by the Cumby Mercantile & Lumber Company against its coappellees M. H. Wolfe & Co. and the Missouri, Kansas & Texas Railway Company of Texas and the appellant the Shippers' Compress & Warehouse Company. It appeared from the testimony heard that about September 19, 1912, the mercantile and lumber company sold 606 bales of cotton to Wolfe & Co. at 11.90 cents per pound, middling basis, f. o. b. the cars at Cumby. The cotton was delivered by the mercantile and lumber company to the appellee railway company, which issued bills of lading covering same, showing the cotton to be consigned to the order of Wolfe & Co. at Sulphur Springs. These bills of lading, to which the mercantile and lumber company attached its sight drafts on Wolfe & Co. for amounts representing the purchase price of the cotton according to the weight thereof as determined at Cumby, were sent to a bank in Sulphur Springs for delivery to Wolfe & Co. when they paid the drafts. The drafts were paid by Wolfe & Co., and the bills of lading were delivered to them. The railway company duly transported the cotton to Sulphur Springs, and in compliance with the order of Wolfe & Co. there delivered same to appellant. Thereupon appellant weighed and compressed the cotton and delivered same, with a statement showing the weight thereof as determined by it, to Wolfe & Co. The weight of the cotton as so determined was 1,882 pounds less than the weight thereof as determined in Cumby. By the terms of the contract between the mercantile and lumber company and Wolfe & Co. as the parties construed it, the former was bound to refund to the latter the sum they had paid to the mercantile and lumber company representing said difference of 1,882 pounds between the weight of the cotton as determined at Cumby and its weight as determined by appellant, and the mercantile and lumber company, in compliance with a demand of Wolfe & Co. that it do so, repaid said sum to them. The purpose of the mercantile and lumber company's suit was to recover of the other parties the sum ($211.31) it repaid to Wolfe & Co. as stated. The court peremptorily instructed the jury to find in favor of Wolfe & Co. and the railway company, and, the jury having so found, rendered judgment that the mercantile and lumber company take nothing by its suit against them. There being evidence sufficient to support a finding, either that appellant, while it had possession of the cotton for the purpose of weighing and compressing it, before weighing it had wrongfully taken and converted a portion of it to its own use, or after weighing it had falsely stated the weight thereof, intending to take and convert a portion thereof to its own use, the court submitted to the jury an issue as to the right of the mercantile and lumber company to recover against it. The issue was determined in favor of the mercantile and lumber company, and in accordance with the verdict of the jury judgment was rendered in said mercantile and lumber company's favor against appellant for the sum of $211 and costs.

Crosby, Hamilton & Harrell, of Greenville, for appellant. D. Thornton, of Sulphur Springs, Tex., for appellee.

WILLSON, C. J. (after stating the facts as above). That appellant was liable for the value of the cotton the jury found it had wrongfully converted to its own use is not doubted. The question is, Was it liable to the mercantile and lumber company for the value thereof as determined by the judgment? Appellant insists it was not, because it appeared the cotton belonged to Wolfe & Co., and it did not appear that the mercantile and lumber company had any interest in or right of control over it. The contention must, we think, be sustained. If the property did not become the property of Wolfe & Co. when it was delivered to the railway company at Cumby, it became their property when they paid the drafts drawn on them by the mercantile and lumber company and obtained the bills of lading from the bank in Sulphur Springs. Wells v. Littlefield, 59 Tex. 560. That Wolfe & Co. paid the drafts and secured the bills of lading before or at the time the cotton was delivered to appellant sufficiently appears from testimony in the record.

It was shown that at other times during the same season Wolfe & Co. purchased of the mercantile and lumber company other lots of cotton besides the one in question here, and that the understanding between them applicable to each of the lots 'was that Wolfe & Co. at the time they purchased same should pay for the cotton according to the classification and weight thereof as determined by or for the mercantile and lumber company in Cumby, but that in a settlement to be had between them at the close of the season a classification to be made by Wolfe & Co. and the weight thereof as determined by appellant should control. The mercantile and lumber company insists that it appeared that the cotton had not been classified by Wolfe & Co. nor weighed by appellant at the time it converted 1,882 pounds thereof, and therefore that the title to the cotton had not passed to Wolfe & Co., but was still in it; and that appellant was in the attitude of holding it as its bailee for the purpose of pressing and weighing it. We are inclined to think the testimony was sufficient to have supported a finding that appellant converted 1,882

pounds of the cotton before it was either classified by Wolfe & Co. or weighed by appellant, but we cannot agree if it so appeared it should therefore be held that the title to the cotton had not passed to Wolfe & Co., but was still in the mercantile and lumber company at the time of the conversion. The mercantile and lumber company, as the seller, had done everything it was to do to complete the sale, and had received the purchase price of the cotton from Wolfe & Co. on the basis of its grade and weight as determined in Cumby as agreed upon. Therefore we think it must be said the sale appeared to be complete, and that the title to the cotton then passed to Wolfe & Co. (Sedgwick v. Cottingham, 54 Iowa, 512, 6 N. W. 738), notwithstanding the fact that the parties contemplated a reclassification and reweighing of the cotton. Evidently such reclassification and reweighing was of importance only in connection with the settlement to be made between them at the close of the season. On the facts shown by the record it is plain, we think, that the liability of appellant was to Wolfe & Co., and not to the mercantile and lumber company.

[1] And we think it is also plain that the mercantile and lumber company was not bound to refund to Wolfe & Co., as it did, the sum representing the value of the cotton converted by appellant, notwithstanding the agreement which provided that the weight of the cotton as determined by appellant should be the basis of the settlement to be had between them. That agreement would not have applied to cotton sold and delivered by the mercantile and lumber company to Wolfe & Co. which appellant converted but did not weigh, nor do we think it would have applied had it appeared that appellant falsely weighed the cotton for the purpose of covering up a fraudulent conversion it contemplated of a part of it. We think the agreement should have been construed as binding the parties to settle by the weight of the cotton as fairly and honestly determined by appellant, and not as same might be falsely and fraudulently determined by it.

There is nothing in the record which suggests a reason why the cause should be remanded for a new trial. The judgment, therefore, will be reversed so far as it was in favor of the mercantile and lumber company against appellant, and judgment will be here rendered that said mercantile and lumber company take nothing by its suit against appellant. There being no complaint of the judgment in other respects, it will not be otherwise disturbed.

On Appellee's Motion for Rehearing.

[2] It is insisted that it appeared from testimony in the record that the cotton was consigned by the mercantile and lumber company to itself at Sulphur Springs, and that the conclusion reached by us that it was con-

signed to Wolfe & Co. was unauthorized. It is true the witness Rash testified that the cotton was consigned to the mercantile and lumber company "with instructions to notify Wolfe & Co.," and that the witness Hull testified that the cotton was consigned to the mercantile and lumber company with "Notify M. H. Wolfe & Co.," written on the waybill. But the bill of lading copied into the record showed the cotton to have been consigned to the order of Wolfe & Co., as stated in the opinion, and we were, and are, of opinion the recital in the bill of lading was conclusive of the fact.

[3] It is further insisted that it did not appear from testimony in the record when the drafts attached to the bills of lading were paid by Wolfe & Co., and therefore that we erred in finding they were paid before the cotton was delivered to appellant for the purpose of being weighed and compressed. It is true there is no direct testimony showing the time when the drafts were paid, and therefore that the statement in the opinion, when construed as meaning there was such testimony, is incorrect. But the burden of proving that it was the owner of the cotton at the time it was alleged to have been converted was on the mercantile and lumber company.

[4] As the legal effect of its failure to make such proof was not different from that which would have followed proof that the drafts were promptly presented by the bank and promptly paid by Wolfe & Co., it is not believed the conclusion reached by us, erroneous as it may have been, that it appeared that the cotton belonged to Wolfe & Co. at the time it was converted by appellant, is of importance. That conclusion, in its legal effect, was sufficiently supported by the fact that it did not appear that the cotton then belonged to the mercantile and lumber company. And we think it is not clear, it being shown that the drafts were in fact paid and the cotton in fact delivered by the carrier to appellant, and it appearing that the carrier was without authority from the mercantile and lumber company to deliver the cotton either to Wolfe & Co., appellant, or any one else, before the drafts were paid and the bills of lading presented to it, that, in the absence, as was the case, of any evidence to the contrary, a presumption should not have been indulged that the drafts were promptly presented by the bank and paid by Wolfe & Co. before the cotton was delivered to appellant. 2 Chamberlayne on Ev. § 1056.

In the motion attention is directed to the fact that Wolfe & Co. in their answer allege, as an estoppel against the mercantile and lumber company to maintain its suit against them, that in an adjustment of transactions between them covering sales of cotton by the latter to the former, a dispute which arose between them as to the weight of the cotton in question was settled by an agree-

ment on the part of the mercantile and lumber company to recognize the weight of the cotton as determined by appellant as controlling in such adjustment, which was afterwards made on that basis, and to the fact that Wolfe & Co. in their answer further alleged that:

"If the cotton [quoting] weighed less at the compress than its actual weight, said loss of weight was not due to any fault of this defendant, but was due to the fact that the agents and servants of the defendant compress company weighed the cotton incorrectly and too light, as alleged by plaintiff, with the idea in view that they would take therefrom cotton in the amount of three pounds per bale and appropriate the same to their own use and benefit, and it alleges that the agents and servants of said defendant compress did take from said cotton the amount of three pounds per bale and converted the same to their own use and benefit and the use and benefit of said defendant compress company, amounting to 1,818 pounds of the value of 11.90 cents per pound, and that said compress company is thereby liable to plaintiff for said sum, and not this defendant."

[5, 6] In the light of the allegations in the answer referred to, findings involved in the verdict, and the legal effect of testimony in the record, the case presented was about this: That appellant, while holding cotton as the bailee of Wolfe & Co., the owners thereof, converted same to its own use, and so became liable to Wolfe & Co., who were liable to the mercantile and lumber company for its value, and that Wolfe & Co., instead of asserting that a liability against appellant existed in their favor, asserted that, in a settlement of matters between them and the mercantile and lumber company, they so treated the cotton converted as the property of the mercantile and lumber company as to estop the latter from claiming to the contrary as against them, and further asserted that the liability of appellant was not to them, but was to the mercantile and lumber company. The liability of appellant to Wolfe & Co. having been established, and Wolfe & Co., being in the attitude, in effect, of having relinquished to the mercantile and lumber company its right to recover on account of the liability of appellant to them, the question is, Should the judgment in favor of the mercantile and lumber company, awarding it a recovery on that liability, be set aside? The mercantile and lumber company contends it should not be, and we have reached the conclusion that the contention should be sustained. Being liable for the conversion, and being protected as it is by the facts appearing in the record and the judgment rendered from an assertion against it of a liability in favor of Wolfe & Co., we see no reason why appellant should be heard to complain that it has to pay to the mercantile and lumber company the sum it justly owes to Wolfe & Co. On the facts appearing in the record we think the transaction set up in the answer of Wolfe & Co. should be treated as operating as an equitable assignment to the mercantile and lumber company of its claim against appellant, whereby the mercantile and lumber company became subrogated to the right existing in Wolfe & Co. to enforce against appellant the liability it had incurred.

Therefore the motion will be granted and the act of this court in reversing the judgment of the court below and here rendering judgment denying the mercantile and lumber company relief will be set aside, and the judgment of the court below will be affirmed.