83 So.2d 704 (1955)
J.Y. McNEILL, trading and doing business as McNeill Lumber Company, Appellant,
v.
John R. JACK, Jr., trading and doing business as John R. Jack Lumber Company, Appellee.
Supreme Court of Florida, Special Division B.
November 2, 1955.
Rehearing Denied December 19, 1955.
*705 E.D. Treadwell, Jr., and Treadwell & Treadwell, Arcadia, for appellant.
D. Frank Smoak, Jr., Punta Gorda, and Henderson, Franklin, Starnes & Holt, Fort Myers, for appellee.
THORNAL, Justice.
McNeill, who was defendant below, appeals from a judgment entered by the Circuit Court without a jury in favor of Jack, who was plaintiff below.
In April, 1951, McNeill, a wholesale lumber dealer in Jacksonville, placed with Jack, a lumber supplier in Punta Gorda, a purchase order for 50,000 feet of "genuine tidewater red cypress" lumber of stipulated grade, the purchase order expressly stating the price to be "F.O.B. Cars Mill" and further provided "SCMA [Southern Cypress Manufacturers' Association] rules to govern". The destination of the lumber which was to be shipped from time to time is not stated in the purchase order. It merely provided, "Ship To: Advise us for inspection & shipping instructions". Testimony is without conflict, however, that with reference to the three shipments involved in this case, McNeill directed Jack to ship the lumber to Jacksonville. Jack shipped two cars to McNeill, who diverted them from Jacksonville to a dealer in Boston. We shall call these "the first Boston car" and "the second Boston car". A third car was shipped to McNeill, who retained it, in Jacksonville. We shall call this "the Jacksonville car".
McNeill paid Jack the full invoice price on the two Boston cars but when the Jacksonville car arrived, he contended that the lumber in all three cars was not up to stipulated quality or quantity and that as a result he lost $3,271.18 in anticipated profits and expenses on the Boston cars and $2,997.34 on the Jacksonville car. He sold all the saleable lumber on the Jacksonville car for $1,330.32, keeping the balance intact. Jack sued McNeill for $2,836.89, the invoice price of the lumber on the Jacksonville car. McNeill counterclaimed for loss of profits and expenses incurred due to the alleged *706 shortage of lumber and defective quality. The Court tried the case without a jury, awarded Jack $1,330.32, which was the amount that McNeill had salvaged, and denied McNeill any recovery on his counterclaim.
The case actually turns on the question of two rules of SCMA, designated Rules 41 and 42. These rules are quoted from the record as follows:
"41. Upon receipt of complaint from the purchaser, the seller should immediately request this Association to provide official reinspection or retally, as the case may be, according to its inspection rules in effect at the time of execution of contract; and the purchaser shall lend all reasonable assistance to facilitate the reinspection or remeasurement. Requests for reinspection should be accompanied by copy of order, but in the absence of such information the inspector will grade the lumber according to the standard Cypress grades herein specified. Ten days after complaint has been made the buyer has the same right as the seller to request this Association to provide official reinspection or retally.
"42. In case of complaint regarding grade but not involving tally, the buyer is required to accept that portion of a shipment of lumber of Standard grade or Standard size which is up to grade or of Standard size, as the case may be, holding intact that portion thereof, the grade or size of which is in dispute, for official Association inspection; the action on the part of the buyer in accepting and using such portion of the shipment shall not be construed as his acceptance of the entire shipment. Further, the buyer shall pay in accordance with the terms of sale for that portion which he accepts, but the acceptance by the buyer of a part of a shipment does not prejudice his just claims on account of any unused material that is alleged by him to be below Standard grade or not of Standard size. The complainant buyer shall hold disputed material intact, properly protected, for not exceeding 30 days after date of the request for official inspection or reinspection, and shall file complaint with seller within ten days of receipt of shipment." (Emphasis added.)
McNeill contends that Rule 41 is applicable. It will be noted that in this rule no time is stipulated within which the buyer is required to file complaints with the seller when the complaint is based on a shortage in quantity or defective quality. Jack contends that Rule 42 is applicable. It will be noted that this rule applies where there is a complaint regarding grade or quality but not involving a shortage of quantity. By this rule the buyer is required to "file complaint with seller within ten days of receipt of shipment".
Although there is testimony to the effect that the complaint about the shipments was grounded on defective quality and shortage in quantity, nowhere in the record does there appear any bill of lading, order or other document showing the quantity of lumber that Jack was required to ship in the two Boston cars. Furthermore, we have examined the certificate of inspection signed by the inspector of SCMA after his inspection of each of the three cars at the request of McNeill. These exhibits were filed by appellant McNeill and in each instance on the line entitled "Complaints registered by holder of material:" the inspector certified "Lumber not up to grade". Nowhere in the certificate of inspection is it indicated that there was any complaint based on a shortage of quantity. This was appellant's own evidence and he is bound by it and we, therefore, find that on the basis of this record, SCMA Rule 42 governs.
As to the first Boston car, we find that the car was received in Jacksonville on May 25, 1951. It was diverted by McNeill to Boston where it arrived June 5, 1951. It is admitted that no complaint was registered with Jack until July 2, 1951. Therefore, obviously, the notice of complaint required by Rule 42 was not filed within ten days after receipt of shipment. As to the second Boston car, it is noted that it was received *707 in Jacksonville June 14, 1951, and immediately diverted by McNeill to Boston where it arrived June 25, 1951. The notice of complaint on this car was also given on July 2, 1951, and, therefore, was within the requirements of the rule. As to the Jacksonville car, there is adequate evidence in the record to justify the conclusion which the trial Judge obviously reached to the effect that when he ordered this carload of lumber, McNeill did not intend to pay for it. At the time he placed the order he apparently knew of the anticipated claim that he would make on the Boston cars. He placed the order by telephone and sent a check for $2,000 to Jack to pay for the lumber. Before the Jacksonville car arrived in Jacksonville, he stopped payment on the check. When he did this he could not have known of any defects in the lumber in this car.
On the basis of the evidence before the trial Judge we find that he was justified in the conclusion that under the circumstances McNeill was not entitled to recover on his counterclaim for expenses incident to the handling of the Jacksonville car or any loss of anticipated profits on the lumber in that car. Our problem, therefore, finally resolves itself into a consideration of the rights of the parties with reference to the second Boston car in regard to which the requirements of SCMA Rule 42 were met.
Jack contends that the cars were ordered "F.O.B. Cars Mill" and that, therefore, McNeill took title when the lumber was placed in the railroad cars at the mill in Punta Gorda, and having title he assumed the risk of defective quality. The weakness in this contention is that the order also provided that the lumber was being shipped under "SCMA Rules". These rules provided for inspection and rejection upon receipt of the lumber.
There is a difference of opinion among the authorities as to the effect of an order "F.O.B. Cars Mill". We think the better rule is stated in 46 Am.Jur. "Sales", p. 610, Sec. 444, where authorities are cited for the view that where a purchaser reserves the right of inspection at a point other than the place of shipment, the articles to be shipped F.O.B. at the latter place, the title to the subject matter passes to the purchaser only conditionally on delivery to the carrier and is subject to the buyer's right to reject the articles if they do not conform to the requirements of the contract. Under the purchase order in the instant case, therefore, McNeill took title to the lumber when it was placed on the freight cars in Punta Gorda but it was title accepted conditionally upon the lumber being up to quality stipulated by the contract when it was received at its ultimate destination.
It will be noted that SCMA Rule 42 requires the purchaser to file his complaint with the seller "within ten days of receipt of shipment". Jack contends that the shipment of the second Boston car was "received" by McNeill when the car reached Jacksonville on June 14, 1951, rather than when it reached Boston pursuant to McNeill's diversion order on June 25, 1951. Under the circumstances appearing from the record in this case it is clear that Jack, the seller, knew that McNeill, the buyer, was in the wholesale lumber business only. It is also shown that lumber cannot be inspected by an SCMA inspector while it is loaded on a freight car. This leads us to the conclusion that "receipt of shipment" as used in Rule 42 has reference to the ultimate "receipt of shipment" at the point where the lumber is to be unloaded. This conclusion is applicable only to that phase of the case dealing with the necessity of giving notice within ten days after receipt of the shipment.
The record does not show that Jack was informed that the lumber would be transshipped or diverted to a dealer in Boston. That fact becomes important in determining McNeill's right to recover for loss of anticipated profits resulting from the defective quality of the lumber.
The rule to which we adhere is clearly stated in 46 Am.Jur. "Sales", Sec. 746, p. 874, from which we quote as follows:

*708 "* * * The general rule is well settled, however, that damages based on a resale by the purchaser of the subject matter of the sale, such as loss of profits which would have accrued to him had he been able to carry out the resale contract, cannot be recovered by him for a breach of a warranty in the principal sale contract by the seller where the latter was not informed of the resale and was not chargeable with notice thereof. * * *"
In asserting his counterclaim for expenses for handling the two Boston cars of defective lumber, appellant McNeill failed to separate the expenses incident to the first car and the second car. We have held that he is not entitled to recover in connection with the first Boston car because of his failure to comply with the SCMA Rule 42. For the reasons above stated we hold that he is entitled to a new trial on his counterclaim in regard to the second Boston car, but with reference to the claim for anticipated profits, he must carry the burden of proving that at the time of the shipment Jack, the seller, was informed of the proposed resale of the carload of lumber or was chargeable with knowledge thereof. The complaint filed by Jack in this case claimed only the selling price of the lumber in the Jacksonville car. The Court allowed him to recover the proceeds of the salvage-sale of this lumber. To that extent the judgment of the lower Court is affirmed.
In denying to McNeill recovery on his counterclaim, however, the judgment of the lower Court will have to be, and it is hereby, reversed for a new trial on the counterclaim with reference to the second Boston car only.
Reversed for further proceedings consistent with this opinion.
DREW, C.J., and THOMAS and HOBSON, JJ., concur.