**EXHIBITION DISPLAY SERVICE COM-PANY, Inc., d/b/a All-Type Exhibitors Display Service Company, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COM-PANY, Appellee.**

**No. 23707.**

United States Court of Appeals
Fifth Circuit.

June 20, 1967.

Richard L. Lapidus, Miami, Fla., for appellant.

Howard E. Barwick, James E. Tribble, Miami, Fla., Blackwell, Walker & Gray, Miami, Fla., for appellee.

Before PHILLIPS,* THORNBERRY and DYER, Circuit Judges.

DYER, Circuit Judge:

In this appeal Exhibition Display Service Company, Inc., challenges the entry of a directed verdict in favor of Liberty Mutual Insurance Company.

Exhibition contracted with NASA to build and deliver f. o. b. contractor's plant 175 one-eighth scale models of NASA's space vehicles. All items were to be inspected and accepted by NASA at the contractor's plant. NASA officials did inspect the models at Exhibition's plant in Miami, Florida, immediately prior to shipment and found them to be suitable. The models were packaged individually and shipped on a government bill of lading to NASA's warehouse in Alexandria, Virginia. Approximately two weeks after receipt of the goods in Virginia NASA notified the president of Exhibition to come to the NASA warehouse in Virginia to inspect the goods. His inspection revealed that the models and their containers were severely damaged. The models were sent back to Miami and repaired by Exhibition at a cost of over $20,000.

Exhibition filed a claim with its insurer, Liberty Mutual, who rejected the claim, and Exhibition brought suit on the policy.

The policy covers direct physical loss or damage from external causes to property owned by Exhibition or owned by somebody other than Exhibition to the

---

* Of the Tenth Circuit, sitting by designation.

extent of Exhibition's liability.[1] The policy does not insure against latent defects, faulty material or faulty workmanship.

Both parties concede that because the delivery terms of the contract were "f. o. b. contractor's plant" under Florida law title passed to NASA at the moment of shipment. Jacobson v. Neuensorger Korbwaren-Industrie Friedrich Kretz, K.-G., Fla.App.1959, 109 So.2d 612. No question of coverage of loss or damage to property owned by Exhibition therefore is involved.

However, if the risk of loss in transit was on Exhibition after the property left the contractor's plant despite the passing of title to NASA, then damage in transit would be covered under the policy as damage to property "owned * * * by others to the extent of insured's liability therefor * * *."

██ Under Florida law risk of loss ordinarily accompanies the passing of title. Jacobson, supra; Heinberg v. Cannon, Fla.1896, 36 Fla. 601, 18 So. 714; Greenwood Products Co. v. United States, 5 Cir., 1951, 188 F.2d 401. Appellant, however, says that the exception of McNeill v. Jack, Fla.1955, 83 So.2d 704, applies. That case holds that when the terms of the contract provide for inspection at a point other than the place of shipment title passes only conditionally on delivery to the carrier and is subject to the purchaser's rights to reject the goods if they do not conform to the requirements of the contract.

The inspection terms of the contract in McNeill expressly provided for the right of inspection and rejection upon receipt of the goods at their final destination. In the Exhibition-NASA contract, however, the only inspection terms provide for inspection at the contractor's plant, the place of shipment; however there is a guarantee clause in the contract which applies "notwithstanding the provisions of the inspection clause." The clause guarantees that the models will be free from defects in material and workmanship and will conform to the requirements of the contract at time of delivery. Exhibition maintains that this clause provides for an inspection at a point other than place of shipment and that therefore, under McNeill, supra, the risk of loss in transit was on Exhibition and the policy covered the loss. We do not agree.

██ Exhibition's contention that despite the "f. o. b. contractor's plant" delivery terms of the contract the term "delivery" as used in the guarantee clause meant NASA's warehouse in Virginia and not the contractor's plant in Miami and that risk of loss therefore remained on Exhibition until "delivery" in Virginia is unsound. "Delivery point" as used in the guarantee does not refer to the *original* point of delivery where the goods were initially transferred from Exhibition to NASA but plainly means the point at which some latent defect is discovered and where the goods are thereupon delivered for a return shipment to Exhibition for repair.

This construction harmonizes the use of the word "delivery" throughout the contract without doing violence to the expressed intention of the parties that "de-

---

1. The pertinent parts of the policy read as follows:

"I. This policy insures property, destined for installation, fabrication, erection, moving, repairing or renovating; owned by the assured or by others to the extent of the assured's Liability therefor consisting of: Draperies, Murals, Art Displays, Exhibiting Equipment, custom furniture and similar items on premises or site where work is to be performed, while in temporary storage awaiting installation, during installation, all until ac-

cepted as satisfactory or the interest of the assured ceases, whichever first occurs.

"II. This policy also insures the property while in transit to points or places where work is being performed including the risks of loading and unloading while at risk of the assured.

"III. This Policy Insures Against:

All risks of Direct Physical Loss or Damage to the insured property from any external cause (Except as hereinafter excluded.)"

livery" for the purposes of transfer of title was f. o. b. contractor's plant.

■ The guarantee clause was clearly an express warranty against faulty materials, faulty workmanship and latent defects. It was clearly not an expression of the parties' intention to switch risk of loss from its normal placement on the purchaser, and it has nothing to do with externally caused damage which is the only type of damage covered by the policy.

We hold that the ordinary Florida risk of loss rule applies, that risk of loss in transit was on NASA and therefore there is no coverage under the policy.[2]

The judgment is
Affirmed.

2. Having found no coverage we do not reach the other contentions of Exhibition, but we observe that the complete lack of evidence that the damage occurred while the goods were in transit is fatal to Exhibition's recovery on any premise advanced by it.