210 P.2d 221

**STATE v. FLING.**

**No. 998.**

Supreme Court of Arizona.

Oct. 3, 1949.

information that defendant assaulted the complaining witness in the private home of the latter. By section 43-603, A.C.A.1939, it is provided that when any person goes into a private home and there is guilty of an assault or battery, such assault or battery is "aggravated." This appeal is from the resulting judgment and sentence to a term in the state penitentiary. Upon an additional count in the information charging assault with a deadly weapon, the defendant was acquitted.

An abbreviated statement of the facts presents the following picture. The parties lived in separate trailer houses located in a section of the Colorado River bottom called "Okie Flats," approximately one-half mile south of Bull Head City, Mohave County, Arizona. Defendant secured his electricity through wires running from the trailer of the complaining witness Hodges, who testified that on the evening of the alleged offense defendant knocked on his door and was told to "come in"; that upon entering defendant said "* * * Theodore, did you turn my lights off?" Hodges further testified: "* * * and he used some bad language there when he said that, and I was sitting there and as I started to raise up is when he pulled his gun." The examination of Hodges proceeded as follows:

"Q. You say that was when he pulled his gun? A. As I raised up out of the chair.

"Q. Did he pull a gun? A. Yes.

Fred O. Wilson, Atty. Gen., Charles Rogers, Asst. Atty. Gen., Maurice Barth, Asst. Atty. Gen., Carl D. Hammond, Co. Atty., Mohave Co., Kingman, for appellee.

Morgan & Locklear, of Phoenix & Prescott, for appellant.

LaPRADE, Chief Justice.

Clyde Fling, defendant-appellant, was by a jury convicted of the crime of aggravated assault, a felony. The "aggravation" had its origin in the allegation of the

"Q. From where? A. He had it stuck down in his belt.

"Q. What did he do with it? A. He stuck it in my stomach.

"Q. And you say he called you a vile name? A. Yes.

"Q. What did he call you? A. He said 'You * * *, you better fix them lights.'

"Q. What did you do? A. I went down to see if I could help him fix them. There wasn't anything for me to do,—he had a gun in my belly—except to say 'Yes, yes, yes.'

"Q. He didn't keep the gun against you all that time? A. No, not all that time."

Hodges also testified that, while they were out examining the electric line with a flashlight, defendant continued to curse him and kept insisting that the line must be fixed that night. At this juncture of the examination this question was put to Hodges:

"Q. Did he threaten you with any injury with this gun? A. Well, he didn't then, but he came back up there and beat around the trailer with something or other, a piece of pipe or a gun one. * * * * "

The testimony of Mrs. Hodges was essentially corroborative of that of her husband.

Defendant categorically denied practically all of the testimony of Mr. and Mrs. Hodges. He denied that he entered their trailer home; that he had a gun; or that he in any manner assaulted Mr. Hodges in the home. Defendant testified that when he discovered that the lights did not turn on he called to Hodges and asked him if he had turned the lights off; that at this time he was approximately 100 feet from Hodges' trailer; that Hodges and his wife came out of the trailer and walked down to where he and Mr. McKenzie were examining the line; that he told Hodges that if he, Hodges, would pay him the $32.60 he owed him he would put in his own line; that Hodges said, "I don't consider I owe you over two or three dollars." Defendant further testified: "I told him he and his wife owed me $32.60, and he said I was a damned liar, so we argued around there a little bit and I did try to whip him with my fists but he wouldn't fight and he went on back into his house and we went on back into the house, and that is all there was to it." Defendant's version of the affair was substantiated by the witness McKenzie, who lived with defendant.

Appellant's chief assignment of error is that the verdict and resulting judgment finding him guilty of aggravated assault was voided by the verdict of not guilty upon the count charging assault with a deadly weapon, in that there was no evidence of assault other than that offered in support of the latter count. In view of the disposition of this assignment, no con-

sideration will be given to the other assignments. Appellant's argument under this assignment is based upon the proposition that "where two or more crimes involve an element essential to each, an acquittal on one bars a conviction on the other, provided the evidence of the essential element is the same in each case."

The assault charged in count 2, for which defendant was convicted, must have occurred inside the home of Hodges. The charge fixed the place, but contained no allegation as to the manner or means by which the alleged assault was committed. If it was committed, it had to have been accomplished as Hodges said it was—by having the gun stuck in his stomach as he arose from his chair. Neither Hodges, Mrs. Hodges, nor the witness McKenzie testified to any other threatening or menacing movement made by the defendant to enforce his demand that the lights be turned on. This is the proof that was relied on by the state to establish the alleged assault with a deadly weapon and that was rejected by the not-guilty verdict. The finding of no assault with a deadly weapon necessarily makes the finding of an assault inside the home false.

To sustain this particular charge of aggravated assault, it would not be essential that the assault in the home be committed with a deadly weapon, but it is essential that an assault should have occurred in the home. Under the state's evidence the only assault in the home was with a deadly weapon, but the verdict negatives such an assault. These two verdicts are irreconcilable and contradictory. In this situation we are constrained to believe that the following rule obtaining in many jurisdictions is applicable here— "Whenever a jury finds the defendant not guilty of a count in which is charged an act which forms an essential element of another count, a conviction on the second count cannot be sustained." 10 So.Cal.Law Rev. 208. (For collection of cases see Anno. 80 A.L.R. 171.) Another line of authorities holds that no verdict, however illogical, should be reversed by reason of its inconsistency; and that each count in an indictment should be considered separately and apart from all other counts in the same indictment. Dunn v. U. S., 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161. The effect of this ruling is that an acquittal on one charge cannot be pleaded as res judicata on a different charge, though based on the identical facts.

The lack of consistency was excused in this last cited case by quoting, with approval, the following observation from Steckler v. U. S., Cir., 7 F.2d 59, 60: " * * * The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their

assumption of a power which they had no right to exercise, but to which they were disposed through lenity."

In a complicated fact situation it might be argued that a verdict was the result of confusion, mistake, compromise, or leniency, but in the case before us the fact situation was most simple. The not-guilty verdict established that the defendant made no assault with a deadly weapon, and, as a necessary consequence, that he made no assault in the home. The issue was clear cut: its determination was solely within the province of the jury. The finding of the jury is conclusive. The guilty verdict, having no factual basis, is a nullity.

But it is suggested that we are committed to the rule that inconsistency in verdicts is of no consequence in view of the rule of procedure promulgated by this court on July 9, 1941, effective October 15, 1941, now appearing as section 44-725a, A.C.A.1939, Cum. Pocket Supp. This rule reads: "Charging two or more offenses or same offense in different counts—Order to consolidate—Election by prosecution—Separate trials—Effect of acquittal on one or more counts.—An indictment, information, or complaint may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more indictments or informations are filed in such cases the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the indictment or information, but the defendant may be convicted of any number of the offenses charged, and each offense upon which the defendant is convicted must be stated in the verdict; provided, that the court in the interest of justice and for good cause shown, may, in its discretion, order that the different offenses or counts set forth in the indictment or information be tried separately, or divided into two or more groups and each of said groups tried separately. A verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count." (Emphasis supplied)

Much stress is laid on the last sentence. A comparison of the rule (section 44-725a) with section 954. Penal Code of California, rather definitely indicates that we adopted the rule from California. An analysis of the California section and its history since 1852 is contained in Ex parte Johnston, 2d Dist. 1934, 78 Cal.App.Dec. 887, 36 P.2d 225, 231. The last sentence of our section was enacted by California as a legislative amendment in 1927, Cal. Stat. 1927, p. 1042, and had, therefore, been in effect in that state 14 years prior to adoption by us. Prior to our promulgation of the rule, it had been considered in California on several occasions. In People v. Ranney, 3d Dist. 1932, 123 Cal.App. 403,

11 P.2d 405, 406 it was held that by the addition of the last sentence "a verdict of either conviction or acquittal" upon the charge in one count "has no effect or bearing upon other separate counts." In Oliver v. Superior Court, 2d Dist. 1928, 92 Cal.App. 94, 267 P. 764 and People v. Koehn, 1929, 207 Cal. 605, 279 P. 646 (both decided subsequent to the enactment of the last sentence of the section under consideration and prior to the Ranney case, but without reference to the section) it was held that a verdict on one count would be regarded as bearing on the guilt or innocence of the accused on other counts of the same information if the facts and record warranted it, and that if an acquittal on one count logically demanded a finding that the accused did not commit an act which is an essential element of the offense charged in another count, a verdict of guilty on the last named count would be set aside as a nullity.

In Ex parte Johnston, supra, the defendants were charged with thirteen counts of violating the Corporate Securities Act and one charge of conspiracy to violate the act, the only overt acts alleged being the specific violations charged in the first thirteen counts. On all thirteen counts the jury found the defendants not guilty, but on the conspiracy count, found them guilty. The court refused to follow the holding in People v. Ranney, supra, and discharged the defendants on habeas corpus. This holding was affirmed by the Supreme Court in Ex parte Johnston, 1935, 3 Cal.2d 32, 43 P.2d 541, 543, upon the theory that the jury in acquitting the defendants of the overt acts in effect acquitted them of the conspiracy. In discussing the rule (section 44-725a) with particular reference to the last sentence, the court said: " * * * The section was manifestly adopted for the purpose of enabling the prosecutor to designate or name the offenses by two or more names or designations and of making it impossible for the defendant to escape by reason of an error in designation of the crime. The proviso was written into the section for the purpose of declaring the law that a verdict apparently inconsistent shall afford no basis for a reversal where the evidence is sufficient to support the conclusion that the defendant is guilty of the offense of which he stands convicted. But we cannot construe it to mean that an indictment or information charging conspiracy is sufficient without the allegation of an overt act, nor that such an indictment or information furnishes the basis for a judgment of conviction when the defendant has in fact been acquitted of every overt act alleged. This conclusion is corroborated to a degree by the case of People v. Koehn, 207 Cal. 605, 279 P. 646, 649, wherein it was held, where two counts were inconsistent, not as a matter of pleading but as a matter of evidence, that the defendant, though found guilty of both, must be held to be acquitted on one of the

**100**

two counts. The pertinent part of that opinion reads as follows: 'Returning to the question whether a conviction on both counts of the information may be sustained, we are of the view that the two conclusions are inconsistent with each other and cannot be reconciled by the application of any rule by which the purposes of a rational mind may be determined.' "

 We approve of this concept of the rule. In adopting the rule with this known interpretation it may be assumed that its construction was adopted with it, especially since the interpretation is reasonable. This is a rule of statutory construction to which we have adhered. Gonzales v. Vargo, 1929, 34 Ariz. 556, 273 P. 725; Wylie v. Douglas Lumber Co., 1932, 39 Ariz. 511, 8 P.2d 256, 83 A.L.R. 918; 7 Arizona Digest, Statutes, ☞226. We believe that the rule is applicable in construing a rule of court procedure adopted by the court, where the rule was adopted from another jurisdiction. Section 44-725a, supra, is procedural in its nature. State v. Pierce, 59 Ariz. 411, 129 P.2d 916. In California the rule was enacted by the legislature—in Arizona it was promulgated by the supreme court by legislative authority. Section 1, chapter 8, Session Laws 1939; section 19-202 A.C.A. 1939; Burney v. Lee, 59 Ariz. 360, 129 P.2d 308. Regardless of its source, it is still a rule governing criminal procedure in our courts. It is subject to interpretation, and in construing it we consider that the rule of statutory construction referred to above is plainly applicable.

The judgment is therefore reversed and the cause remanded with instructions to the superior court to vacate its judgment and discharge the defendant.

UDALL, STANFORD, PHELPS, and DE CONCINI, JJ., concur.