ARTHUR JONES *vs.* COMMONWEALTH.

Suffolk.  March 5, 1951. — June 7, 1951.

Present: QUA, C.J., LUMMUS, SPALDING, & COUNIHAN, JJ.

*Constitutional Law*, Self incrimination, Waiver of constitutional rights. *Evidence*, Relevancy and materiality, On cross-examination. *Witness*, Cross-examination, Impeachment, Self incrimination. *Waiver*.

At the trial of a complaint for violation of a regulation of the metropolitan district commission prohibiting, apparently regardless of motive or intent, the display of signs or other advertising in a reservation under its control, a question by the trial judge to the defendant, who had voluntarily taken the stand, "Are you a Communist or a member of the Communist Party?" was irrevelant to the issue on trial and was incompetent for the purpose of impeaching his credibility.

A defendant in a criminal case voluntarily taking the stand does not waive his constitutional privilege against self incrimination with respect to matters which are irrevelant to the issue on trial.

At the trial of a complaint, an affirmative answer by the defendant, who had voluntarily taken the stand, to a question by the trial judge, which was irrelevant to the issue on trial and incompetent for the purpose of impeaching the defendant's credibility, "Are you a Communist or a member of the Communist Party?" would furnish evidence which might reasonably expose the defendant to prosecution under G. L. (Ter. Ed.) c. 264, § 11, as amended, or might substantially increase the danger thereof; and, after the defendant had properly asserted his privilege against self incrimination, to compel an answer to the question would violate the provision of art. 12 of the Declaration of Rights preserving that privilege.

PETITION for a writ of error, filed in the Supreme Judicial Court for the county of Suffolk on August 8, 1950.

The case was reserved and reported by *Ronan*, J.

*G. Kantrovitz*, for the plaintiff in error.

*H. P. Fielding*, Assistant Attorney General, for the Commonwealth.

*D. Holmes,* by leave of court, submitted a brief as amicus curiae.

SPALDING, J. This is a writ of error to reverse a judgment of criminal contempt entered against the plaintiff in error in the District Court of Chelsea in the course of proceedings in which he and two others were on trial[1] for violating a regulation of the metropolitan district commission. This regulation, which is not set forth in the record, apparently prohibits the display of signs or other advertising in reservations under the control of the commission. The Commonwealth pleads in nullo est erratum. For convenience the plaintiff in error, who was the defendant in the District Court, is referred to herein as the defendant. A single justice of this court reserved and reported the case without decision "upon the petition for writ of error, writ of error, writ of scire facias, the return of the judge of the District Court of Chelsea, and the plea of the respondent, for the consideration of the full court."

In the District Court the Commonwealth introduced evidence that on July 23, 1950, the defendant and the two persons on trial with him were members of a group of approximately twenty persons which had assembled on the swimming beach known as the Revere Beach Reservation; that the reservation is under the control of the metropolitan district commission; that the group occupied an area about thirty feet square; and that within this area the three defendants erected ten signs.[2]

The defendant voluntarily took the stand and testified that he was the leader of a group of young people who went to the beach for a picnic; that he went to the beach solely for the purpose of relaxing; that he had erected four signs; that neither of the other two defendants had erected any signs; and that the group of which he was the leader

[1] By agreement all three defendants were tried together. Each was represented by counsel.

[2] These signs contained legends of the following tenor: "We Want Peace"; "Homes & Schools — Not Atomic Bombs"; "Outlaw the Atom Bomb"; "We Want to Grow up In a World at Peace"; and "Young Progressives of America."

was organized solely to promote peace. At the conclusion of his testimony "the court was of the opinion that . . . [the defendant] had testified falsely. To test his veracity and to determine what credibility should be given to his whole testimony or any part thereof, the court proceeded to examine" the defendant as appears in the margin.[1] The interrogation culminated in the question, "Are you a Communist or a member of the Communist Party?" The defendant replied, "I refuse to answer on advice of counsel." A discussion followed between the judge and the defendant's counsel, the latter arguing that the question was irrelevant and that an answer to it might tend to incriminate the defendant. The judge ruled that the defendant, having voluntarily taken the stand, "must answer all questions relevant and material to the issues before the court." The judge again asked the defendant whether he was a Communist or a member of the Communist Party and upon his refusal to answer the question he was adjudged in contempt and ordered committed to jail.

Seven assignments of error are set forth in the petition but in the view we take of the case the only one we need consider is that which alleges an impairment of the defendant's privilege against self incrimination.

When a defendant in a criminal case voluntarily takes the stand he waives his privilege against self incrimination to the extent that he renders himself liable to cross-examination on all facts relevant and material to the crime with which he is charged. *Commonwealth* v. *Lannan,* 13 Allen, 563, 569. *Commonwealth* v. *Mullen,* 97 Mass. 545, 546. *Commonwealth* v. *Nichols,* 114 Mass. 285, 287. *Commonwealth* v.

---

[1] "THE JUDGE: You stated that you went there solely for relaxation? THE DEFENDANT: Yes. THE JUDGE: And the purpose of your organization is solely that of promoting peace? THE DEFENDANT: Yes. THE JUDGE: Have you been on a public beach before? THE DEFENDANT: Yes. THE JUDGE: Have you ever seen signs such as these on public beaches? THE DEFENDANT: No. THE JUDGE: Why then did you believe that you had a right to erect them? THE DEFENDANT: I don't know. I can't answer that. THE JUDGE: Is it not true that the Young Progressives of America is listed as a subversive organization — a Communistic Front? THE DEFENDANT: No. THE JUDGE: Is it not true that there are many Communists in this group? THE DEFENDANT: No."

*Smith,* 163 Mass. 411, 431–432. *Commonwealth* v. *Fortier,* 258 Mass. 98, 100. *Commonwealth* v. *Galvin,* 310 Mass. 733, 748. *Raffel* v. *United States,* 271 U. S. 494, 497. And in such a case the defendant may be impeached and discredited like other witnesses. *Commonwealth* v. *Bonner,* 97 Mass. 587, 589. *Commonwealth* v. *Gorham,* 99 Mass. 420, 421. *Commonwealth* v. *Morgan,* 107 Mass. 199, 205. *Commonwealth* v. *Tolliver,* 119 Mass. 312, 315–316. *Commonwealth* v. *Galvin,* 310 Mass. 733, 748. The judge, of course, had the right to put questions (*Brooslin* v. *Cohn,* 270 Mass. 38, Wigmore on Evidence [3d ed.] § 784), and we assume, for present purposes, that his right in this respect was not less than that of counsel, at least to the extent that the interrogation was free from partisanship or bias. See *Adler* v. *United States,* 182 Fed. 464 (C. C. A. 5); *United States* v. *Marzano,* 149 Fed. (2d) 923 (C. C. A. 2). But we fail to see how the question asked by the judge was relevant to any matter in issue. The issue was whether the defendants had done that which the regulation forbade. Proof that the defendant was a Communist or a member of the Communist Party would have no bearing in establishing that fact. A conviction under the regulation apparently, as the judge conceded, did not require proof of the defendant's motive or intent.

Nor was the question competent for purposes of impeachment. Whatever the rule may be elsewhere, it is settled in this Commonwealth that "a witness cannot be asked on cross-examination, in order to affect his credibility, about his part in transactions irrelevant to the issue on trial." *Commonwealth* v. *Schaffner,* 146 Mass. 512, 515. *Schmidt* v. *Schmidt,* 216 Mass. 572, 578. *Commonwealth* v. *Gettigan,* 252 Mass. 450, 460. *Commonwealth* v. *Lammi,* 310 Mass. 159, 163. The defendant's political beliefs were not the proper subject of inquiry for purposes of impeachment.

Under art. 12 of the Declaration of Rights the defendant could not be "compelled to accuse, or furnish evidence against himself." Thus as to those matters which were

not relevant to the issue or proper for impeachment purposes the defendant was privileged from answering any question which would "expose him to criminal prosecution, or tend to subject him to a penalty or forfeiture." *Bull* v. *Loveland,* 10 Pick. 9, 14. In our opinion the disclosure called for by the judge's question would have violated that privilege.[1] True, being a Communist or a member of the Communist Party is not a criminal offence in this Commonwealth, but by revealing that he was either the defendant would be furnishing a link in a chain of evidence which might expose him to a criminal prosecution under our statutes. *Emery's Case,* 107 Mass. 172, 181–182. *Commonwealth* v. *Prince,* 313 Mass. 223, 229–231. *Counselman* v. *Hitchcock,* 142 U. S. 547. *Mason* v. *United States,* 244 U. S. 362, 365–366. *Arndstein* v. *McCarthy,* 254 U. S. 71. *Blau* v. *United States,* 340 U. S. 159, 161. Compare *Commonwealth* v. *Joyce,* 326 Mass. 751, 755.

Under G. L. (Ter. Ed.) c. 264, § 11, as appearing in St. 1948, c. 160, § 1, it is provided: "Whoever by speech or by exhibition, distribution or promulgation of any written or printed document, paper or pictorial representation advocates, advises, counsels or incites . . . the overthrow by force or violence or other unlawful means of the government of the commonwealth or of the United States, shall be punished by a fine of not more than one thousand dollars, or by imprisonment for not more than three years, or both . . . ." A Federal statute, commonly known as the Smith act

---

[1] No contention is made that the claim of privilege was not properly asserted. The privilege, of course, belonged to the defendant and not to his attorney. *Ross* v. *Crane,* 291 Mass. 28, 33. Wigmore, Evidence (3d ed.) § 2270. Here when the question was first put the defendant refused to testify "on advice of counsel." Counsel then advanced the ground that the answer would incriminate the defendant. The question was then renewed and the defendant again refused to answer. In the circumstances we think that the defendant had adopted the ground stated by counsel and that his refusal to answer was tantamount to a personal claim that the answer would incriminate him. See *People* v. *Brown,* 72 N. Y. 571, 574; *Page* v. *Payne,* 293 Mo. 600, 621; *Clifton* v. *Granger,* 86 Iowa, 573; *State* v. *Shockley,* 29 Utah, 25, 44–46. Compare *State* v. *Wentworth,* 65 Maine, 234, 241–242; *State* v. *Kent,* 5 N. D. 516, 554–556. We are not to be understood as holding that the refusal of a witness to answer, without more, constitutes a valid claim of the privilege. See *Ross* v. *Crane,* 291 Mass. 28, 33.

(U. S. C. [1946 ed.] Sup. III, Title 18, § 2385), contains similar provisions.[1]

In the very recent case of *Blau* v. *United States,* 340 U. S. 159, the court reversed a judgment of contempt entered against a witness who refused to answer questions before a Federal grand jury as to her knowledge of the organization, membership, and workings of the Communist Party. The court took notice of the provisions of the Smith act and based its reversal on the privilege against self incrimination contained in the Fifth Amendment to the Federal Constitution. At page 161 the court said, "These provisions [of the Smith act] made future prosecution of petitioner far more than 'a mere imaginary possibility . . .' *Mason* v. *United States,* 244 U. S. 362, 366; she reasonably could fear that criminal charges might be brought against her if she admitted employment by the Communist Party or intimate knowledge of its workings. Whether such admissions by themselves would support a conviction under a criminal statute is immaterial. Answers to the questions asked by the grand jury would have furnished a link in the chain of evidence needed in a prosecution of petitioner for violation of (or conspiracy to violate) the Smith Act." Other cases to the same effect are *Alexander* v. *United States,* 181 Fed. (2d) 480 (C. A. 9), and *Estes* v. *Potter,* 183 Fed. (2d) 865 (C. A. 5). We are of opinion that the reasoning underlying these decisions is sound and that it is applicable here. That an admission that one is a Communist may furnish a "link in the chain of evidence" needed in prosecutions for conspiracy to violate a statute of the type of G. L. (Ter. Ed.) c. 264, § 11, as amended, is amply demonstrated by the

---

[1] Pertinent provisions of this act are as follows: "Whoever knowingly or willfully advocates, abets, advises, or teaches the duty, necessity, desirability, or propriety of overthrowing or destroying the government of the United States or the government of any State . . . by force or violence . . . ; or

"Whoever, with intent to cause the overthrow or destruction of any such government, prints, publishes, edits, issues, circulates, sells, distributes, or publicly displays any written or printed matter advocating, advising, or teaching the duty, necessity, desirability, or propriety of overthrowing or destroying any government in the United States by force or violence, or attempts to do so; . . .

"Shall be fined not more than $10,000 or imprisoned not more then ten years, or both . . . ."

cases of *Dunne* v. *United States,* 138 Fed. (2d) 137 (C. A. 8), certiorari denied 320 U. S. 790, applications for rehearing denied 320 U. S. 814, 815, *Dennis* v. *United States,* 341 U. S. 494, and *United States* v. *Foster,* 80 Fed. Sup. 479. The question asked by the judge called upon the defendant to furnish evidence which might reasonably have exposed him to a prosecution under G. L. (Ter. Ed.) c. 264, § 11, as amended, or, at least, might have substantially increased the danger of such a prosecution. *Emery's Case,* 107 Mass. 172, 181–182. *Commonwealth* v. *Prince,* 313 Mass. 223, 229–231. This cannot be done under our Constitution.

It follows that the judgment of the District Court is reversed. The plaintiff in error is awarded costs against the Commonwealth to be paid by the county of Suffolk. See G. L. (Ter. Ed.) c. 250, § 12; *Walsh* v. *Commonwealth,* 224 Mass. 39, 41.

*So ordered.*