307 P.2d 607

**STATE** of Arizona, Appellee,

v.

Daniel J. MARSIN, Appellant.

No. 1083.

Supreme Court of Arizona.

Feb. 19, 1957.

Robert Morrison, Atty. Gen., Wm. P. Mahoney, Jr., County Atty., Maricopa County, and Thomas Tang, Deputy County Atty., Maricopa County, Phoenix, for appellee.

Terrence A. Carson, Phoenix, for appellant.

STRUCKMEYER, Justice.

Daniel J. Marsin was convicted of the crime of grand theft and appeals. Four-

teen assignments of error have been presented to this court most of which do not require extended discussion.

It is defendant's position that the evidence is insufficient to support a conviction of theft in that criminal intent was not shown. Admittedly the intent to permanently deprive the owner of his possession is an essential ingredient of the offense. Whitson v. State, 65 Ariz. 395, 181 P.2d 822. From our examination of the transcript of the evidence, we are of the opinion not only that the jury was justified in finding that the defendant intended to permanently deprive the owner of his possession in the stolen articles, but that there can be no reasonable doubt to the contrary. Similarly it is urged that the evidence at the preliminary hearing was not sufficient to show that the crime of grand theft was committed. This argument comes too late when first raised on appeal. State v. Singleton, 66 Ariz. 49, 60, 182 P.2d 920.

Defendant was originally charged with the crimes of grand theft and receiving stolen property. The charge of receiving stolen property was dismissed during the course of the trial. It is urged that a dismissal of this charge operates as an acquittal of the charge of grand theft and that the conviction on the charge of grand theft cannot be sustained where it is supported by the same evidence, citing State v. Laney, 78 Ariz. 19, 274 P.2d 838, and State v. Fling, 69 Ariz. 94, 210 P.2d 221.

We find no merit in this assignment. The two offenses are so distinct that one cannot be said to be merged into the other, nor is the conviction of one in any way incompatible with the conviction or acquittal of the other. A.R.S. Crim. Rule 128, subd. C. Section 44-725a. A.C.A.1939 as amended. Leon v. State, 21 Ariz. 418, 189 P. 433, 9 A.L.R. 1393.

By statute, A.R.S. Crim. Rule 115, Section 44-711, A.C.A.1939, it is proper to charge an offense simply by its statutory name, and if the details of the offense are desired by the accused, a bill of particulars will be granted in accordance with A.R.S. Crim. Rule 116, Section 44-712, A.C.A. 1939. By statute, A.R.S. 13-661, Section 43-5501, A.C.A.1939, the crime of theft may be perpetrated in a number of different ways. One is by the failure to return lost property to its owner. In the instant case, the information charged the crime of grand theft without specifying how the theft was committed. It is urged that the trial court erred in admitting evidence which might be construed by the jury as indicating that the defendant initially took and carried away the property rather than found it after it was stolen. Inasmuch as defendant neither requested a bill of particulars which would have limited the prosecution to the details contained therein, nor objected to admission of the evidence at the trial, we find no merit to this contention. Nor did the court err in submit-

ting the charge of grand theft to the jury on instructions relating to the State's theory of the commission of the offense; namely, by failing to return lost property; neither is the verdict of the jury a nullity or void as not being responsive to the crime charged. We find no merit to defendant's assignment that the argument of the prosecuting attorney was inflammatory and prejudicial; nor will we consider claimed errors in instructions where given without objection unless so fundamental that it is manifest that the defendant did not have a fair trial. State v. Martinez, 67 Ariz. 389, 198 P.2d 115.

We come now to what defendant claims is the most damaging and serious error in the trial. The court, over objection, admitted in evidence the testimony of witnesses that Marsin had, in a civil hearing prior to his arrest, refused on advice of counsel to answer certain questions relating to the stolen property on the ground that the answers might tend to incriminate him. It is the theory of the prosecution that the refusal to answer in that hearing is a tacit admission from which the jury in this criminal case could draw an inference of guilt. Defendant argues that the privilege of self-incrimination is worthless, if, subsequent thereto, the party availing himself of it incurs a detriment or a penalty.

The Constitution of this State, Article II, Section 10, A.R.S., provides:

"No person shall be compelled in any criminal case to give evidence against himself, * * *."

This article is consonant with like constitutional provisions found in nearly every state and with the Fifth Amendment to the Constitution of the United States. Its historical background has been the subject of such extensive examination that there cannot now be any misunderstanding as to the reason for its perpetuation as the fundamental law of this country. VIII Wigmore, Evidence, 3rd Edition, Section 2250. 21 Virginia Law Review 763, The Colonial and Constitutional History of the Privilege Against Self-Incrimination in America; 42 Georgetown Law Journal 345, The Fifth Amendment—An Evaluation.

During the early years of the Seventeenth Century, there existed in England a period of extreme political and religious strife under the reigns of the Tudors and Stuarts. The Court of Star Chamber and its "ecclesiastical twin," the Court of High Commission, were instrumentalities of arbitrary and despotic powers in which the interrogation of those brought before them was accompanied by the use of both force and the compulsory testimentary oath. Puritanical opposition to the compulsory oath was seemingly as strong as the use of violence being placed in the same category as torture and the resentment to these practices greatly stimulated the emigration of dissenters to America who fled from the

kingdom in search of political and religious freedom in the colonies. There the struggle against compulsory testimony continued for the administration of justice was in the hands of the prerogative courts of governor and council and persisted sporadically to the time of the Revolution. As the final break with England approached many of the colonies enacted bills of rights and constitutions containing clauses prohibiting compulsory testimony. For example, in the Constitution of Pennsylvania in 1776, Chapter I, Section IX, it was provided:

> "That in all prosecutions for criminal offences, a man hath a right to be heard by himself and his counsil, * * * *nor can he be compelled to give evidence against himself * * *."* (Italics ours.)

■ From the historical standpoint, the privilege against self-incrimination is directly referrable to no more than a prohibition against compelling testimony either by force or by inquisition under compulsory oath. The essential liberty guarded is the involuntary nature of the self-accusation. Indian Fred v. State, 36 Ariz. 48, 60, 61, 282 P. 930. Nowhere do we find any suggestion that noncompulsory incrimination is within the protective ambit of the Constitution.

■ Nevertheless, it has been found that if an accused, at his criminal trial, exercised the privilege and refused to testify, the prosecution drew such an unfavorable inference that the benefit sought to be guaranteed was in effect lost. The accused, whether innocent or guilty, was compelled to become a witness, for the alternative was conviction because of silence. This led to the adoption of what is now Section 13–163, A.R.S.:

> "The defendant's neglect or refusal to be a witness in his own behalf shall not in any manner prejudice him, or be used against him on the trial or proceedings."

It provides a defendant with protection against the drawing of an unfavorable inference from his silence, but it is plainly limited to the trial in which he fails to be a witness.

■ We are now asked to extend the protection of the Constitution for the statute to the circumstances of this case. Here the defendant became embroiled in an argument as to the ownership of the property with which he was later charged with stealing, the property then being in the custody of the court; and on being notified that the court was holding a hearing for the avowed purpose of determining the ownership of the property, he voluntarily appeared as a claimant, seemingly voluntarily subscribed to an oath, and freely testified until it became apparent that further testimony was inconvenient and embarrassing. We do not think it necessary to stretch the Constitution or Section 13–163,

**6**

supra, to the extent urged by defendant. These enactments together stand as a shield against oppression, but we do not conceive that they were intended or necessarily ought to be used to absolve a wrongdoer of every consequence of his criminal folly. Cf. "A Reappraisal of the Immunity from Self-Incrimination," 39 Minn.Law Review 75.

 Most courts permit the cross-examination of a defendant to show a previous claim of privilege against self-incrimination, Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054, Jones v. Commonwealth, 327 Mass. 491, 99 N.E.2d 456. There is, however, some suggestion that a prior failure to testify cannot be shown unless the accused voluntarily takes the witness stand. VIII Wigmore, 3rd Edition, Par. 2272, Page 418. Originally it was never contemplated that the Constitution would be construed to afford such protection. In any event, we do not believe that the cases cited in support of the text are authority against the proposition upon which we here rely; namely, that where one voluntarily enters into a proceeding and as a participant seeks a material advantage which he would not otherwise gain, the essence of the prohibition against compelling testimony does not exist, for the element of compulsion is not present. Since the defendant was not compelled to participate in the proceedings in the first instance, his acts must be held to be voluntary even to the act of claiming the privilege. That his action in claiming the privilege might later be subject to inspection or investigation to determine its motivation is no more protected by the Constitution or the statute than any other act committed without coercion which might have some bearing on guilt or innocence.

No point has been made that under these particular circumstances the claiming of privilege in the civil hearing did not tend to establish an inference of guilt. Consequently, we intimate no opinion as to the correctness of the trial court's ruling on the relevancy of the evidence.

Affirmed.

WINDES, PHELPS and LA PRADE, JJ., concur.

UDALL, Chief Justice (specially concurring).

I agree that the judgment of conviction entered against defendant should be affirmed. This conclusion is reached notwithstanding my belief there was error committed in the State's case in chief in the court's admission in evidence of testimony relative to defendant's previous claim of privilege against self-incrimination. It is understandable that the average citizen might find the invoking of this privilege in a court proceeding both distasteful and offensive to his sense of propriety. Nevertheless, experience over the ages has shown there is sound reason be-

hind the "fifth amendment". For the reasons hereinafter stated and upon the basis of authority cited, I am writing this separate opinion for the sole purpose of registering my disapproval of what I consider a "whittling away" or abridgment of a constitutional privilege by the majority opinion.

In the instant case the evidence of guilt was so overwhelming that—independent of this error—defendant was impelled to take the witness stand and tell his version of the affair if he hoped to escape conviction. Therefore, when he voluntarily testified, this privilege against self-incrimination was effectually waived and the previous reference to his failure to testify at the civil hearing became wholly innocuous.

Specifically, I disagree with that portion of the majority's opinion wherein it is stated that the protection afforded a defendant in section 13–163, subd. B, A.R.S., is " * * * plainly limited to the trial in which he fails to be a witness." The following statement by Wigmore concerning the rule forbidding drawing inferences from the claim of the privilege against self-incrimination generally states what I believe to be the law:

"The rule also forbids drawing an inference, during the trial, from the accused's prior failure to testify at a *preliminary* or other prior *examination;* unless where he has now waived the privilege by voluntarily taking the stand." Wigmore on Evidence, Vol. VIII, 3rd Ed., § 2272, p. 418. .

I interpret the words *"preliminary* or other prior *examination"* to mean the rule is applicable to any prior court proceeding, and the cases cited by Wigmore bear out such interpretation.

It should be noted that we are not now concerned with defendant's right to assert, or the correctness of the court's allowance of, the privilege in the civil hearing, nor with how such claim arose; it is necessary only that the record show in fact it was claimed in a prior court proceeding. We should not now rely on the voluntary nature of defendant's acts in the prior proceeding, for the only issue properly before us is whether the introduction of evidence by the State in this action, showing prior claim of privilege against self-incrimination, violated Article 2, section 10, of the Arizona Constitution and section 13–163, subd. B, supra.

It appears to me that undue stress is also placed by the majority on that portion of section 13–163, subd. B, supra, which states the refusal to be a witness shall not be used against one on " * * *the trial or proceedings." While Article 710, Vernon's Annotated Code of Criminal Procedure of the State of Texas, states that one's failure to testify shall not be " * * * commented on by counsel in the cause * * *", no limitation is derived from the use of article "the" in re-

ported decisions of that State. In Hare v. State, 56 Tex.Cr.R. 6, 118 S.W. 544, 545, 133 Am.St.Rep. 950, the court held that it was reversible error to permit the prosecution's question directed to an accused's failure to testify in a former trial. A like interpretation of our statute is necessary, especially in view of additional words therein, namely, that such refusal " * * * shall not in any manner prejudice him * * *."

Generally, the problem is this: does reference in a defendant's later trial to his prior claim of privilege against self-incrimination result in a denial of his constitutional and statutory rights? The following observation of the Supreme Court of Tennessee in a similar situation most persuasively forces the conclusion that it can be such a denial:

"To hold otherwise would be to put on a defendant the hazard of foreseeing in the earlier trial the effect in a subsequent trial of such failure [to take the stand]; whereas the policy of the statute is to protect him in the trial in which he is first put to his election, as well as in a later trial." Smithson v. State, 127 Tenn. 357, 155 S.W. 133, 135.

See also, Parrott v. State, 125 Tenn. 1, 139 S.W. 1056, 35 L.R.A.,N.S., 1073. Equally pertinent is the following language in State v. Bailey, 54 Iowa 514, 6 N.W. 589, 590:

"It would indeed be strange if the law should confer upon a witness this right as a privilege, and at the same time should permit the fact of his availing himself of it to be shown as a circumstance against him. *It certainly is a privilege of very doubtful character if the effect of claiming it is as prejudicial to the witness as the effect of waiving it.*" (Emphasis supplied).

A like conclusion was reached in Loewenherz v. Merchants' & Mechanics' Bank, 144 Ga. 556, 87 S.E. 778, 780. Sheer logic, without such respectable authority, should impel the same conclusion. In this case I believe it amounts to nothing less than a judicial fiat to construe the privilege as has the majority opinion, particularly when authority for such a construction is not cited, doubtless because none is to be found in states having comparable constitutional and statutory provisions.

In Garcia v. State, 35 Ariz. 35, 274 P. 166, we held that one may waive the privilege against self-incrimination. As is indicated in the majority opinion, many courts which have wrestled with the problem have held that by taking the stand a defendant waives the privilege and any protection from comment thereon. See Wigmore, supra. When defendant Marsin voluntarily took the stand, he effected a waiver of the privilege not only as to this trial but as to the former proceeding as well. At that point, and not before,

did his previous refusal become relevant and admissible, and then only for the purpose of impeachment. See, Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054; Commonwealth v. Smith, 163 Mass. 411, 40 N.E. 189, 196; People v. Prevost, 219 Mich. 233, 189 N.W. 92.

The above authorities clearly indicate the prosecutor should not be permitted to introduce evidence of the prior refusal to testify until after defendant takes the stand; this salutary rule was not followed in this case. However, in my opinion there is no reversible error in such irregularity here, for defendant did voluntarily take the stand subsequently and, hence, waived the benefit of the rule.