385 P.2d 516

**STATE of Arizona, Appellee,**

**v.**

**David Henry BARKER, Appellant.**

**No. 1296.**

Supreme Court of Arizona,

In Division.

Oct. 10, 1963.

384

Steve Kosteck, Jr., Tucson, for appellant.

Robert W. Pickrell, Atty. Gen., Jack I. Podret, Former County Atty. of Pima County, Norman E. Green, County Atty. of Pima County, Arthur R. Buller, Deputy

County Atty. of Pima County, for appellee.

STRUCKMEYER, Justice.

Appellant was charged with second degree murder and two counts of assault with a deadly weapon arising out of the homicide of Carlos Ravago and the wounding of his two brothers Hector and Ramon. After trial, a verdict of guilty of voluntary manslaughter in the death of Carlos and verdicts of not guilty on the two counts of assault were returned by the jury. This appeal is from the verdict, judgment and sentence on the conviction for voluntary manslaughter.

The facts viewed most strongly in favor of upholding the jury verdict, State v. Perez, Ariz., 383 P.2d 745, establish that on September 2, 1961, at about 11:00 p. m., the three brothers entered Ralph's Tavern in Tucson, Arizona. They had previously consumed a considerable quantity of beer and while at Ralph's Tavern consumed two large pitchers of beer. About 1:00 o'clock, Carlos went to the bar and purchased a 6-pack of beer and a fifth of wine from appellant, the bartender. An argument developed between Carlos and appellant concerning whether he had requested a pint size rather than a fifth. Hector came over to the bar and demanded that appellant exchange the fifth for a pint. Appellant informed them that because the price had already been rung up on the cash register he could not make the exchange and ultimately this precipitated a fight.

The surviving brothers testified that appellant first struck Hector with a ball bat described as a "21-inch Little League baseball bat", that Carlos took the bat away from appellant, and that appellant then went into the kitchen and returned with a gun. Two shots were fired initially, one hit the ceiling and the other hit high in the wall. It is asserted that these two shots were a warning to the brothers. Appellant finally fired a series of shots wounding all three, Carlos fatally.

It is first urged that the trial court erred in refusing appellant's motion to direct the County Attorney to refrain from cross-examining him on a former conviction for manslaughter which occurred some sixteen (16) years prior. Appellant argues that the denial of his motion prevented him from taking the witness stand and testifying on his own behalf.

■ In Arizona, a witness may be impeached by the showing of a prior felony conviction, State v. Sorrell, 85 Ariz. 173, 333 P.2d 1081; State v. Harris, 73 Ariz. 138, 238 P.2d 957, except where the prior felony conviction is so remote that it cannot reasonably cast a reflection on the witness's credibility, State v. Harvill, 89 Ariz. 340, 362 P.2d 663. We said in Sibley v. Jeffreys, 76 Ariz. 340, 345, 264 P.2d 831, 833:

"There is no exact yardstick to measure the time that must elapse to blot out the relevancy of such former conviction; it is largely a matter of court discretion considering not only the time element but length of imprisonment, subsequent conduct, age and intervening circumstances."

In the instant case, at the conclusion of the State's presentation of evidence and in the absence of the jury, counsel for the appellant moved the court to direct the prosecution not to inquire of the defendant, should he take the stand, as to any prior felony convictions. At that time it was stated to the court that the felony conviction was for manslaughter sixteen (16) years prior to trial and under the circumstances that a gun was used. The trial judge indicated that he thought it was a similar situation and might have a bearing on the present case. He then denied appellant's motion to instruct the county attorney.

■ The State argues that there is nothing before this Court on which to predicate a reversal of the trial court, that having received this adverse ruling appellant should have proceeded with his case by taking the stand then raising the question if the State attempted to establish the prior conviction. We are in agreement with the position adopted by the State. First, the appellant is assuming that had defendant taken the stand the county attorney would have used the prior manslaughter conviction by attempting to impeach his credibility. Second, appellant is assuming that the trial court would have adhered to its initial ruling after considering the elements of the test for remoteness, stated in Sibley v. Jeffreys, supra.

■ A trial judge cannot be compelled to rule on a motion in advance of the submission to him of all of the pertinent facts which may be later developed. A defendant's rights are fully protected by this procedure. If a question concerning a prior conviction is asked and it appears to the trial judge that there is a want of relevancy, upon proper application he should declare a mistrial. But, if the trial court's determination is adverse to a defendant, it can then be assigned as error in the usual course of appeal, and this Court can examine the question in the light of all of the facts and our announced rule.

■ Appellant urges that the lower court erred in admitting a morbid photograph of the head of the deceased, arguing that the photograph was repetitious in that the matters depicted could be ascertained from other exhibits in evidence. The photograph established the location of the mortal wound, how death was inflicted and assisted the jury in understanding the testimony of the witnesses. It highlights evidentiary matters which cannot otherwise be found.

Under the repeated decisions of this Court, its admission into evidence was a matter for the trial court to decide in the exercise of its discretion. It was properly admitted in evidence. See State v. Robinson, 89 Ariz. 224, 360 P.2d 474 and Annot., 73 A.L.R.2d 769 "Admissibility of Photograph of Corpse" etc.

It is urged that the court erred in failing to grant appellant's motion for a mistrial on the grounds that the jury at one time submitted inconsistent verdicts. On the second day of their deliberations the jury returned with verdicts which when examined by the court were found to be defective in that they were inconsistent. The record does not reflect in what respects the verdicts were inconsistent. The trial court then further instructed the jury and it retired for further deliberation and shortly thereafter brought in the verdicts as stated.

■ First, we cannot assume that prejudice arises without a showing of the nature of the inconsistency. Second, Criminal Rule 298, 17 A.R.S. is applicable:

> "If a verdict is so defective that the court cannot determine whether the jurors intended to acquit the defendant or to convict him of an offense for which judgment could be entered under the indictment or information, or cannot determine on what count or counts the jurors intended to acquit or convict the defendant, the court shall, with proper instructions, direct the jurors to reconsider the verdict. The verdict shall not be received *until it clearly appears therefrom whether the jurors intended to acquit or convict the defendant, and on what count or counts they intended to acquit or convict him,* but if they persist in rendering such defective verdict, the verdict shall be received and entered of record as rendered." (Emphasis supplied.)

■ The appellant further urges that the court below erred in failing to grant his motion for a new trial for the reason that the evidence established one indivisible incident involving all three Ravago brothers, that the acquittal by the jury on the two assault counts committed against Hector and Ramon is inconsistent with the verdict of guilty on the charge of voluntary manslaughter. Defendant relies on State v. Fling, 69 Ariz. 94, 210 P.2d 221. There the defendant was charged with aggravated assault and assault with a deadly weapon. We held that an acquittal on the assault with a deadly weapon under the particular facts of that case had the effect of an acquittal of the charge of aggravated assault. Similarly in State v. Laney, 78 Ariz. 19, 274 P.2d 838, we held that, whenever a jury finds a defendant not guilty of a count in which there is charged an act which forms an essential element of another count, a conviction on the second count cannot be sustained.

There are two reasons why we disagree with appellant's position. First, in both Fling and Laney the defendants were charged with two offenses committed against one victim. Here we are dealing with three (3) offenses committed against three (3) separate individuals, a single offense charged for each victim. While the affray may be considered as one incident, the homicide and each of the assaults are separate, independent criminal acts all arising during the course of the incident.

Second, the distinction observed in State v. Martinez, 67 Ariz. 389, 198 P.2d 115, lies here. There we said that where an accused is convicted on two crimes stemming from the same act, transaction or event the test is whether he could be guilty of both. Applying that test, the verdicts of assault and manslaughter are not necessarily incompatible for the evidence is sufficient to support convictions on all three counts had the jury so decided. In State v. Marsin, 82 Ariz. 1, 3, 307 P.2d 607, 608, we said:

"The charge of receiving stolen property was dismissed during the course of the trial. It is urged that a dismissal of this charge operates as an acquittal of the charge of grand theft and that the conviction on the charge of grand theft cannot be sustained where it is supported by the same evidence, citing State v. Laney, 78 Ariz. 19, 274 P.2d 838, and State v. Fling, 69 Ariz. 94, 210 P.2d 221. We find no merit in this assignment. The two offenses are so distinct that one cannot be said to be merged into the other, nor is the conviction of one in any way incompatible with the conviction or acquittal of the other. A.R.S.Crim.Rule 128, subd. C. Section 44–725a. A.C.A.1939 as amended. Leon v. State, 21 Ariz. 418, 189 P. 433, 9 A.L.R. 1393."

■ The appellant, by eight assignments of error, complains of the trial court's refusal to give certain requested instructions. Essentially, these instructions relate to the law of self-defense. The principles embodied in them were fully covered by the court's instructions on self-defense. The trial court should exercise caution in not emphasizing a particular part of a case out of proportion to the whole, State v. Jackson 94 Ariz. 117, 382 P.2d 229. It was not incumbent upon the court below to reiterate, enlarge or couch the law applicable in appellant's language where the jury was fully and correctly otherwise instructed.

■ Appellant complains of an instruction stating that the right of self-defense exists only as long as the threatened danger, real or apparent, continues and that when the danger has ceased to exist the right to use force in self-defense has ended. He urges that the right of self-defense does not depend on when the danger actually ceased to exist but when the danger had apparently

ceased to exist in the eyes of a reasonable man in appellant's position. The second sentence of the court's instruction if standing alone would be susceptible of the interpretation placed upon it by appellant. However, that portion of the court's instruction complained of is a continuation of the modifying adjectives, real or apparent, as used in the previous sentence. The jury must have understood the court to mean that when the real or apparent danger had ceased to exist the right to use force in self-defense ended. So understood, the instruction is not open to the appellant's criticism. Furthermore, the court adequately instructed the jury that actual danger is not necessary to justify self-defense but only that there be danger as viewed through the eyes of a reasonable man in the defendant's situation.

 Finally, appellant urges the court committed reversible error in sustaining an objection to the admission of the death certificate of Carlos Ravago. By statute, A.R.S. § 12–2264, a death certificate is made "prima facie evidence of the facts therein stated." The statute also prescribes the contents of a death certificate, A.R.S. § 36–334. Subsection A, paragraph 17(b) thereof provides that if the death is from violence "whether the death appears to be accidental, suicide, or homicide shall be stated." A.R.S. § 36–337 requires that the coroner shall sign the death certificate and "if the information gained from the investigations is such as to cause him to suspect that death was suicidal, homicidal * * * he shall so certify."

The death certificate is on a printed form adopted by the Division of Vital Statistics, State Departemnt of Health. In blank No. 23a, where the printed words "accident, suicide, homicide, and natural cause" appear, the coroner typed in the word "homicide" and three asterisks. In blank No. 24a where the words are printed "Coroner's Signature" there are three asterisks and the words "See over" typed in. On the reverse side of the death certificate is typed a paragraph stating an inquest was held and quoting the coroner's verdict that Carlos Ravago came to his death by wounds inflicted "by a gun in the hands of David Henry Barker, Justifiable Homicide" followed by the signature of the coroner.

Appellant urges the rule in California State Life Insurance Company v. Fuqua, 40 Ariz. 148, 10 P.2d 958, that such certificates are admissible to establish why and how the vital wound was inflicted should govern. We are not inclined to extend the holding of Fuqua to criminal cases. Admittedly, there is a split of authority as to whether such statements by a coroner are admissible as facts and not opinions. We question whether the words "Justifiable Homicide" can be more than a conclusion from the facts. Certainly by the express language of the

statute the word "Justifiable" is not such a fact required by statute to be stated on a death certificate.

The rule of the Fuqua case should not be extended beyond civil cases for it is doubtful that the same evidence will be presented to a coroner's jury that is presented to a court of law. Some death certificates are filled in and signed by coroners without adequate investigation or any basis other than mere suspicion. It is often a fact that coroners fill out death certificates without holding an inquest and, where there is an inquest, little evidence may be introduced. Were we in doubt, we would have to conclude that the enlargement of the statutory language to include matters beyond the exact requirements are not within the contemplation of the legislature in directing that a death certificate be "prima facie evidence of the facts therein stated."

The converse of the present situation indicates the evil consequences attendant upon the admission of such extraneous facts. If the State introduced a death certificate containing a statement as "the deceased met his death at the hands of David Henry Barker, Unjustifiably," an injustice could result by the superior court jury substituting the coroner's verdict for the evidence before it.

Affirmed.

BERNSTEIN, C. J., and LOCKWOOD, J., concurring.