386 P.2d 20

**STATE of Arizona, Appellee,**

**v.**

**E. D. EDDINGTON, Appellant.**

**No. 1308.**

Supreme Court of Arizona,

In Division.

Oct. 23, 1963.

Robert W. Pickrell, Atty. Gen., Merton E. Marks, Asst. Atty. Gen., and Charles N. Ronan, Maricopa County Atty., for appellee.

R. Kelly Hocker, Tempe, for appellant.

UDALL, Vice Chief Justice.

Appellant was convicted of assault with a deadly weapon and of obstructing justice by using force and violence against a policeman in violation of A.R.S. § 13–541. The facts must be viewed in the light most strongly in favor of upholding the jury verdict, State v. Barker, 94 Ariz. 383, 385 P.2d 516 (October 10, 1963). Viewed in that light the evidence is as follows: The defendant and the victim were both drinking in a tavern. The victim had recently taken a girl away from the defendant and wished to warn the defendant to stop "picking" at the girl. He asked the defendant to talk with him outside the tavern as the noise inside made it difficult to hear. The defendant and the victim went outside. The victim was carrying a knife in his pocket and testified he moved toward the defendant. The defendant drew a pistol out of his pocket and shot the victim in the head, wounding him. The defendant testified the victim had pulled a knife on him but the victim denied doing so. There was testimony that the victim had been convicted of several felonies and had a poor reputation for peacefulness but there was no testimony that the defendant knew of the convictions or of the reputation prior to the assault.

The shot that hit the victim was heard by a police captain in a cruising police car. He stopped, saw the defendant waving the gun at the victim and ordered the defendant to drop the gun. At a second order the defendant ran and the police captain gave chase but was not able to catch the defendant. An alarm was broadcast and a police officer who heard it stopped a car in which the defendant by

now was riding. The defendant gave a wrong name when asked to identify himself but was identified by his wallet which was lying on the front seat of the car. The defendant bolted and the officer gave chase. The officer chased the defendant into a back yard, lost track of him and headed for an open gate leading out of the yard. He testified that when he was a few feet from the gate he was hit in the back. As he was falling he fired at the defendant and hit him in the back. The defendant testified he ran into the fence in the dark, bounced off it, and then ran through the gate as he was shot. There was testimony that when asked why he had tackled the officer the defendant answered, "I don't know why I did it."

Defendant makes several assignments of error two of which complain of the instruction on self-defense given by the trial judge and the refusal of the trial judge to give a requested instruction on self-defense. The complaint as to the instruction given is based on a bowdlerized version of the instruction the trial judge actually gave. The instruction given is set forth in its entirety with the part complained of italicized:

"*Ladies and gentlemen of the jury, you are further instructed, as a matter of law, before a person can be justified in resorting to a deadly weapon, and using it in a deadly manner, it must appear that he was in imminent peril of death or of great bodily harm, or that a reasonable person under like circumstances would have reasonable grounds to believe that he was in peril of losing his life or sustaining great bodily harm.* [Emphasis supplied.]

"One of the defenses asserted by the defendant is that under the circumstances in this case, the defendant acted in self-defense and that, therefore, defendant is not guilty. It is lawful for a person who is being assaulted, and who has reasonable grounds for believing that great bodily injury is about to be inflicted upon him to stand his ground and defend himself from such attack, and in so doing, he may use all force and means which he believes to be reasonably necessary and which would appear to a reasonable person in the same or similar circumstances to be necessary to prevent the injury which appears to be imminent. If you find the defendant herein so acted in this case, you may find him not guilty of the charge, that is, of the charge of assault with a deadly weapon. If the evidence in this case raises a reasonable doubt in your minds on whether the defendant acted in self-defense, then the State has not maintained its burden of proof and the defendant cannot be convicted.

"Arizona Revised Statutes, 1956, Section 13–246, provides that violence used to a person does not amount to assault or battery when used in self-defense or defense of another against unlawful violence to his person or property, but that only that degree of force may be used which is necessary to accomplish the self-defense, or the defense of another. It is a question of fact for the jury to decide whether the defendant acted in self-defense, with reasonable belief that he was in personal danger, and whether the defendant used no more force than necessary to defend himself from actual or apparent danger."

Defendant contends that the italicized part of the instruction applies an "objective" reasonable man test and is therefore in conflict with our decision in Caston v. State, 24 Ariz. 593, 211 P. 866 and Everett v. State, 88 Ariz. 293, 356 P.2d 394, because defendant's right to defend himself is predicated upon what the jurors would have done or felt it was necessary to do in self-defense.

In Caston we said:

"We think the correct rule is that the apprehension of danger must have been such as would have incited the fears of a reasonable person." 24 Ariz. at 596, 211 P. at 867.

The "Subjective Test" of an apprehension of danger contended for by defendant was specifically rejected in Caston.

■ In Everett we relied upon Caston and said:

"The question to be ultimately determined by the jury was whether defendant *reasonably* believed he was in personal danger * * * and whether he used no more force than 'necessary' to defend himself." 88 Ariz. at 299, 356 P.2d at 398.

The use of the reasonable man test has been reaffirmed by this court in the recent case of State v. Barker, supra, in which we said:

"Furthermore, the court adequately instructed the jury that actual danger is not necessary to justify self-defense but only that there be danger as viewed through the eyes of *a reasonable man* in the defendant's situation." 94 Ariz. at 389, 385 P.2d at 520. [Emphasis supplied.]

The charge of self-defense when read in its entirety is in complete harmony with Caston, Everett and Barker, and applies the reasonable man test.

■ Defendant next contends that the trial court erred in refusing to give the following instruction:

"In considering whether the defendant was acting reasonably in self-defense, you may consider any evidence of the turbulent and dangerous character of the one assaulted on the issue of who (was) the aggressor."

**14**

There was no evidence that the defendant knew of the "turbulent and dangerous character" of the victim at the time of the shooting. While reasonable men may well act on the basis of ignorance it is unreasonable to think that the action of anyone is affirmatively based on facts of which he is unaware. Knowledge prior to the assault by the defendant of the character of the victim is a condition precedent to the giving of the requested charge. Mendez v. State, 27 Ariz. 82, 229 P. 1032.

Defendant next assigns as error questioning by the prosecution as to a previous felony conviction when the prosecutor was not prepared to prove the conviction when he received a negative answer. The testimony was as follows:

"Q   Mr. Eddington, have you ever been convicted of a felony?

"A   No, sir, never have in my life. No kind of crime.

"Q   Have you ever—where were you born, sir?

"A   Mount Pleasant, Texas.

"Q   Did you ever live in Denton, Texas?

"A   I stayed on a farm at a place called Crum, Texas.

"Q   And when were you born?

"A   The 11th day of November, 1919.

"Q   1919?

"A   That's right.

"MR. GORMLEY: I have no further questions.

"REDIRECT EXAMINATION
"BY MR. HOCKER:

"Q   Mr. Eddington, I notice the prosecutor there had a sheet. Have you ever been in jail before?

"A   Yes, I been in jail once or twice.

"Q   What have you been in jail for?

"A   Arrested for drunk, or something like that. Never arrested for a fight or anything. * * *."

As we said in State v. Stago, 82 Ariz. 285, 287, 312 P.2d 160, 161:

"As to the second question, it appears that the county attorney in cross-examining the defendant asked him if he had ever been convicted of a felony. After objection and discussion between the court and counsel, the question was withdrawn; seemingly, the county attorney was not prepared to prove the prior conviction if the defendant answered in the negative. While it is well settled in this jurisdiction that when a defendant offers himself as a witness he may be examined on whether he has suffered a previous conviction of a felony, State v. Polan, 78 Ariz. 253, 278 P.2d 432; Hadley v. State, 25 Ariz. 23, 212 P. 458, it is also equally well settled that a prosecuting officer, in or-

der to impeach him as a witness, cannot engage in questioning which casts insinuations without being prepared and able to prove the insinuations, State v. Singleton, 66 Ariz. 49, 182 P.2d 920. Although the trial court instructed the jury to disregard ' * * * any thought whatsoever of the meaning of the question propounded * * *', prejudices which are so easily aroused are not thus so readily expunged."

The reason for the rule is to keep the state from impeaching the defendant by false insinuations. If the state has shown the court that it is prepared to prove that the defendant had been convicted of a felony it need not actually do so when the defendant gives a negative answer to the question. State v. Hilliard, 89 Ariz. 129, 359 P.2d 66. The distinction is that in the first instance it must be presumed that the insinuation was false while in the second the state has already made a record of the fact that the insinuation is true.

It will be noted that defendant did not move for a mistrial when the state failed to follow up its insinuation with proof. However, when error is so prejudicial that it cannot be cured by instructions, State v. Stago, supra, it must be considered fundamental error which this court will consider in a *criminal* appeal. State v. Hunt, 91 Ariz. 145, 370 P.2d 640. Our decision in

this case makes it unnecessary to consider defendant's other assignment of error.

Reversed and remanded with instructions to grant a new trial.

BERNSTEIN, C. J., and LOCKWOOD, J., concur.